UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                                                    Case No.: 8:20-cr-207-T-36JSS

PHILLIP ROY WASSERMAN
_____/

**REPORT AND RECOMMENDATION**

THIS MATTER is before the Court on Defendant Phillip Wasserman's Motion to Dismiss Counts Five, Six, and Ten of the Superseding Indictment, or in the Alternative for Discovery Regarding Selective and/or Vindictive Prosecution ("Motion") (Dkt. 84), and the Government's response in opposition (Dkt. 101). On January 6, 2021, the undersigned held a hearing on the Motion. For the reasons that follow, the undersigned recommends that the Court deny the Motion.

**BACKGROUND**

On June 23, 2020, a federal grand jury in the Middle District of Florida returned an Indictment charging Defendant Roy Wasserman ("Defendant Wasserman") and Defendant Kenneth Murray Rossman ("Defendant Rossman) with conspiracy to commit wire fraud and mail fraud (Count One); wire fraud (Counts Two through Four); and mail fraud (Counts Five through Seven). (Dkt. 1.) The Indictment was sealed pending Defendants' arrest, which occurred on June 26, 2020. (Dkts. 2, 3, 8, 9.)

1

On November 18, 2020, a federal grand jury in the Middle District of Florida returned a Superseding Indictment charging Defendant Wasserman with conspiracy to commit wire fraud and mail fraud (Count One); wire fraud (Counts Two through Six); mail fraud (Counts Seven through Ten); tax evasion (Count Eleven); and fraud and false statements (Counts Twelve through Eighteen). (Dkt. 69.) The Superseding Indictment charges Defendant Rossman with conspiracy to commit wire fraud and mail fraud (Count One); wire fraud (Counts Two through Six); mail fraud (Counts Seven through Ten); tax evasion (Count Eleven); fraud and false statements (Counts Nineteen through Twenty-One); and aiding and assisting fraud and false statements (Counts Twenty-Two and Twenty-Three). (Dkt. 69.)

Defendant Wasserman is a former attorney and a licensed insurance agent. (Dkt. 69 ¶ 1.) The allegations in the Superseding Indictment involve an insurance business known as FastLife Insurance Company ("FastLife") that Defendant Wasserman founded, as well as other companies Defendant Wasserman owns. (Dkt. 69 ¶¶ 1–8). According to the Superseding Indictment, as early as August 2016, and continuing through at least July 16, 2020, Wasserman solicited at least $6.3 million from victim-investors in a "Ponzi-like" scheme to make payments to earlier investors in FastLife and other companies Wasserman owned and also to finance Wasserman's lifestyle. (*Id.*)

At issue here are Counts Five, Six, and Ten of the Superseding Indictment. Count Five alleges that Defendant Wasserman and Defendant Rossman devised a scheme to defraud to obtain money by false and fraudulent pretenses, and that on

2

November 19, 2019, Defendant executed the scheme in part by wiring $960 to a victim-investor. (Dkt. 69 at 11–13.) Count Six alleges that on December 6, 2019, Defendant wired $1,300 to a victim-investor to execute the scheme to defraud. (*Id.* at 11–14.) Count Ten alleges that to execute the scheme to defraud, on July 16, 2020, Defendant Wasserman sent a purported interest check of $490 to a victim-investor via FedEx. (*Id.* at 14–16.) The Government maintains that these interest payments were "lulling" payments intended to instill the victim-investors with a false sense of security. (Dkt. 101 at 10.)

## ANALYSIS

Defendant Wasserman argues that the Government has selectively and vindictively prosecuted him by adding the counts of wire and mail fraud charged in Counts Five, Six, and Ten of the Superseding Indictment. (Dkt. 84.) Defendant Wasserman maintains that the payments identified in these counts were contractually obligated. (Dkt. 84 at 1–2.) Thus, Defendant Wasserman asserts that the Government is punishing him based on his prior activities as an anti-regulation activist in the insurance industry. (Dkt. 84 at 2–3.) Defendant Wasserman further argues that the Government is punishing him for his expressed intention to aggressively defend himself in this action. (Dkt. 84 at 13.) In response, the Government maintains that Defendant Wasserman's allegations are insufficient to meet the high threshold to establish either vindictive or selective prosecution. (Dkt. 101.)

### A. Selective Prosecution

"It is axiomatic that with limited law enforcement resources, the Government is unable to prosecute every crime that is committed." *United States v. Brantley*, 803 F.3d 1265, 1271 (11th Cir. 2015). "Decisions regarding which crimes will be prosecuted are entrusted by the United States Constitution to the Executive Branch, which is charged with seeing that our nation's laws are enforced." *Id.* (citing U.S. Const. art. II, § 3). "'The judiciary cannot interfere with a prosecutor's exercise of charging discretion, except in narrow circumstances where it is necessary to do so in order to discharge the judicial function of interpreting and applying the Constitution.'" *Id.* (quoting *United States v. Smith*, 231 F.3d 800, 807 (11th Cir. 2000)). "[U]nder the Due Process Clause of the Fifth Amendment, 'the decision whether to prosecute may not be based on an unjustifiable standard such as race, religion, or other arbitrary classification.'" *United States v. Jordan*, 635 F.3d 1181, 1188 (11th Cir. 2011) (quoting *Smith*, 231 F.3d at 807).

To establish that he is "being selectively prosecuted in an unconstitutional manner," a defendant "bear[s] a 'demanding' burden." *Id.* (citing *Smith*, 231 F.3d at 807). "'In order to dispel the presumption that a prosecutor has not violated equal protection, a criminal defendant must present clear evidence to the contrary.'" *Id.* (quoting *Smith*, 231 F.3d at 807). "A defendant asserting that []he was selectively prosecuted must show 'that the federal prosecutorial policy had a discriminatory effect and that it was motivated by a discriminatory purpose.'" *Brantley*, 803 F.3d at 1271

(quoting *Jordan*, 635 F.3d at 1188). "In other words, a criminal defendant who claims []he was subjected to selective prosecution must establish two elements: (1) the discriminatory effect prong of this test requires a showing that 'similarly situated individuals were not prosecuted' . . . , and (2) 'the discriminatory purpose prong requires that the decisionmaker selected or reaffirmed a particular course of action at least in part because of, not merely in spite of, its adverse effects upon an identifiable group.'" *Id.* (quoting *Jordan*, 635 F.3d at 1188).

1. **Discriminatory Effect**

The Eleventh Circuit has described the "similarly situated" component of the discriminatory effect prong as follows:

> [A] 'similarly situated' person for selective prosecution purposes [is] one who engaged in the same type of conduct, which means that the comparator committed the same basic crime in substantially the same manner as the defendant— so that any prosecution of that individual would have the same deterrence value and would be related in the same way to the Government's enforcement priorities and enforcement plan—and against whom the evidence was as strong or stronger than that against the defendant.

*Brantley*, 803 F.3d at 1271–72 (quoting *Smith*, 231 F.3d at 810). In *Brantley*, the court explained that in the context of Title VII employment discrimination cases, "the comparator must be nearly identical to the plaintiff to prevent courts from second-guessing a reasonable decision by the employer," and those "same considerations apply in a challenge based upon selective prosecution because, in all but an exceedingly narrow number of cases, a court is not free to second-guess the prosecutor's exercise of charging discretion." *Id.* at 1272.

5

To establish the similarly-situated element, Defendant Wasserman argues that he is "not aware of any defendant in the Middle District of Florida who has been charged with additional criminal offenses for paying back to investors or creditors alleged to be victims [of] a mail or wire fraud." (Dkt. 84 at 15–18.) Defendant Wasserman asks the Court to take judicial notice that the Government does not ordinarily charge individuals for returning funds to purported victims. (Dkt. 84 at 16–17.) In response, the Government argues that Defendant Wasserman has not identified any unprosecuted offender who committed the same basic crime in the same manner as Defendant Wasserman. (Dkt. 101 at 8–9.)

Defendant Wasserman's argument is based on the premise that the interest payments identified in Counts Five, Six, and Ten of the Superseding Indictment were contractually obligated payments made to investors in the ordinary course of business. (Dkt. 84 at 1, 7–11, 13, 16–17.) Defendant Wasserman compares the payments to lawful activity such as restitution payments.[1] (Dkt. 84 at 16–17.) Thus, Defendant Wasserman maintains that he has been prosecuted for making contractually obligated payments while countless other individuals have gone unindicted or unpunished for making similar return payments to victims. (*Id.*)

Defendant Wasserman has failed to identify any similarly situated comparators who would demonstrate that he was charged with additional offenses for an improper

---

[1] Defendant Wasserman also argues that the payments to these investors were "specifically authorized" by his Order of Release. (Dkt. 84 at 12.) Upon Defendant Wasserman's Motion for Clarification, United States Magistrate Judge Sean P. Flynn rejected this contention, noting that "the Order of Release does not authorize Wasserman to commit wire fraud (or any other crime)." (Dkt. 113 at 2.)

purpose. He argues that the Government has prosecuted him "for returning funds to purported victims," conduct that he argues is not ordinarily prosecuted. (Dkt. 84 at 16.) However, the Superseding Indictment does not support this narrow reading of the charges. Rather, Counts Five, Six, and Ten charge Defendant Wasserman with executing a scheme to defraud by mailing or wiring funds to victim-investors. (Dkt. 69 at 11–16.) As previously noted, the Government disputes Defendant Wasserman's characterization of the payments, explaining that the payments were made to further the alleged scheme to defraud by lulling investors into a false sense of security. (Dkt. 101 at 10.)

Defendant Wasserman's argument ignores the fact that Counts Five, Six, and Ten of the Superseding Indictment allege the making of payments to victim-investors to execute or carry out a scheme to defraud. (Dkt. 69 at 11–14.) The comparators Defendant Wasserman refers to—individuals who merely returned funds to victims or made payments in the ordinary course of business—are not similarly situated, because such conduct, standing alone, is not equivalent to the offenses charged in Counts Five, Six, and Ten of the Superseding Indictment. *See, e.g.*, *United States v. Hill*, No. 1:16-cr-051-TWT-JSA, 2016 WL 6246887, at *4 (N.D. Ga. Sept. 16, 2016) (denying selective prosecution claim because defendant was not similarly situated to cooperating witness), *report and recommendation adopted*, No. 1:16-cr-51-TWT, 2016 WL 6217122 (N.D. Ga. Oct. 25, 2016).

In sum, Defendant Wasserman has not attempted to identify any individuals who committed wire fraud or mail fraud in a similar manner as alleged in Counts Five,

Six, and Ten of the Superseding Indictment but who were not charged. Defendant Wasserman's contention that he was indicted despite the contractually obligated nature of his activity raises a jury question. *See United States v. Toro*, 840 F.2d 1221, 1231 (5th Cir. 1988) ("Whether the defendant had the criminal intent required for conviction is a jury issue[.]"). As a result, Defendant Wasserman's argument on this point fails, and the Court finds that he has not satisfied the discriminatory effect element of his selective prosecution claim.

### 2. Discriminatory Purpose

"The discriminatory purpose prong requires that 'the decisionmaker selected or reaffirmed a particular course of action at least in part "because of," not merely "in spite of," its adverse effects upon an identifiable group.'" *Jordan*, 635 F.3d at 1188 (quoting *Wayte v. United States*, 470 U.S. 598, 610 (1985)). Here, Defendant Wasserman has made no showing that the Government chose to prosecute him (and refrained from prosecuting others) based on Defendant Wasserman's membership in an "identifiable group," such as a classification based on race, national origin, age, religion, or other arbitrary classification.

Defendant Wasserman argues in part that he was targeted because of his anti-regulation activity. (Dkt. 84 at 2–3, 17.) In support, he refers to a letter his former attorney sent in 2008 noting that someone from the Florida Department of Financial Services said Defendant Wasserman "has a lot of enemies around here." (Dkt. 84-1.) However, the 2008 letter says nothing about why Defendant Wasserman was federally

8

indicted or whether he was ever targeted by state or federal agencies based on his anti-regulation activities.

Defendant Wasserman has not established that he was targeted for an improper purpose. The context of the statement Defendant Wasserman relies on is unclear, and the content of the 2008 letter is hearsay. *See United States v. Armstrong*, 517 U.S. 456, 470 (1996) (rejecting claim for discovery on a selective-prosecution claim when affidavits "recounted hearsay and reported personal conclusions based on anecdotal evidence"). Moreover, the activities Defendant Wasserman refers to predated the initial Indictment and thus do not support his claim that the Government filed Counts Five, Six, and Ten of the Superseding Indictment to target him for his political or anti-regulation activities.

In sum, Defendant Wasserman's claim that he was targeted for federal prosecution as a member of an identifiable group is entirely speculative. Speculation is insufficient to support a selective prosecution claim. *United States v. Schoolcraft*, 879 F.2d 64, 68 (3d Cir. 1989) (stating defendant bears the burden of producing evidence to support each element of a selective prosecution claim); *United States v. Buffington*, 815 F.2d 1292, 1305 (9th Cir. 1987) (noting defendant must produce evidence establishing elements of selective prosecution); *United States v. Hintzman*, 806 F.2d 840, 842 (8th Cir. 1986) (holding defendant must produce evidence of impermissible intent or discrimination; *United States v. Sun Myung Moon*, 718 F.2d 1210, 1229–30 (2d Cir. 1983), *cert. denied*, 466 U.S. 971 (1984) (mere suspicion concerning government motives not sufficient to show selective prosecution). Accordingly, the Court

recommends that Defendant Wasserman has not established either component of his selective prosecution claim.

### B. Vindictive Prosecution

"A prosecutor may seek a superseding indictment at any time prior to a trial on the merits, . . . so long as the purpose is not to harass the defendant." *United States v. Barner*, 441 F.3d 1310, 1315 (11th Cir. 2006) (citation omitted). As a general rule, if a prosecutor has probable cause to believe that a defendant committed a crime, "the courts have no authority to interfere with a prosecutor's decision to prosecute." *Id.* A superseding indictment adding new charges that increases the potential penalty "would violate due process if the prosecutor obtained the new charges out of vindictiveness." *Id.* In this context, vindictiveness "means the desire to punish a person for exercising his rights." *Id.* The Eleventh Circuit has explained that a "prosecutor's charging decision does not impose an improper 'penalty' on a defendant unless it results from the defendant's exercise of a protected legal right, as opposed to the prosecutor's normal assessment of the social interests to be vindicated by the prosecution." *United States v. Taylor*, 749 F.2d 1511, 1514 (11th Cir. 1985) (per curiam).

Here, the Government added the three challenged counts to the Superseding Indictment—Counts Five, Six, and Ten—five months after filing the initial Indictment. (Dkts. 1, 69.) The Supreme Court has recognized that the addition of charges while preparing for trial generally does not give rise to a presumption of vindictiveness because, "[i]n the course of preparing a case for trial, the prosecutor

may uncover additional information that suggests a basis for further prosecution." *United States v. Goodwin*, 457 U.S. 368, 381 (1982).  In these circumstances, where the charges were added pretrial, a defendant must prove actual vindictiveness by showing "objectively that the prosecutor's charging decision was motivated by a desire to punish him for doing something that the law plainly allowed him to do." *Id.* at 384.

Here, Defendant Wasserman has not made any showing that the addition of Counts Five, Six, and Ten in the Superseding Indictment was vindictive.  Defendant Wasserman's argument is based on the fact that he expressed his intention to aggressively contest the charges against him.  (Dkt. 84 at 18–19.)  He further argues that although the Government was aware of the payments referenced in Counts Five, Six, and Ten, the Government did not file the Superseding Indictment until after he began to aggressively contest the charges.  (Dkt. 84 at 19–20.)

As the Eleventh Circuit has explained, "[t]he mere fact that a defendant has made pre-trial motions is not sufficient to raise a presumption of prosecutorial vindictiveness." *Barner*, 441 F.3d at 1319.  In addition, the Government's knowledge of facts surrounding the alleged scheme to defraud at the time the initial Indictment was filed does not show that the Government acted vindictively in adding Counts Five, Six, and Ten.  As the Government argues, these counts are based on Defendant's alleged defrauding of different victims than those identified in the initial Indictment.  (Dkt. 101 at 14–15.)  Thus, Defendant Wasserman has made no showing that the Government had the ability to indict him on Counts Five, Six, and Ten when it filed

11

the initial Indictment or that the Government filed the Superseding Indictment to harass him for exercising protected rights.

The cases Defendant Wasserman relies on are factually distinguishable. For example, in *United States v. Jenkins*, 504 F.3d 694, 697 (9th Cir. 2007), the defendant was initially charged with marijuana importation after being twice apprehended (but not charged) while attempting to cross the U.S. border in a vehicle containing undocumented aliens. At defendant's trial for importing marijuana, she testified and denied knowing her vehicle contained marijuana, stating that she believed she was smuggling aliens. *Id.* at 698. Before the end of the defendant's trial for smuggling marijuana, the government indicted the defendant for smuggling undocumented aliens. *Id.* Notably, the government admitted that prior to the defendant's testimony, it "had enough to go forward, unquestionably," and that it "could have brought charges earlier on." *Id.* Concluding that the government's conduct created the appearance of vindictiveness, the Ninth Circuit reversed the denial of the defendant's motion to dismiss. *Id.* at 700. In doing so, the Court noted that "the government's decision to press charges only after Jenkins asserted a reasonably credible defense to the marijuana importation charges raises, at the very least, a 'reasonable or realistic likelihood' that the government's decision was motivated by a retaliatory purpose." *Id.*

Here, in contrast with *Jenkins*, Defendant Wasserman has not been punished for exercising his constitutional right to testify at trial. Moreover, unlike *Jenkins*, the Government here does not admit that it had the ability to file Counts Five, Six, and

Ten when it filed the initial Indictment. (Dkt. 101 at 15.) Thus, the Court does not find that Defendant Wasserman has identified the type of "unusual situation" that gave rise to a presumption of vindictiveness in *Jenkins.*

Defendant Wasserman's reliance on *United States v. Groves*, 571 F.2d 450 (9th Cir. 1978), is also unpersuasive. In *Groves*, the government indicted the defendant for a marijuana offense shortly after the defendant successfully moved to dismiss a cocaine charge based on a violation of the Speedy Trial Act. *Id.* at 451–52. The Ninth Circuit observed that "the government knew all of the facts relating to the marihuana charge on the same day that the cocaine complaint was filed" but declined to indict the defendant until after he had successfully moved to dismiss the cocaine charge. *Id.* at 454. In reversing the denial of the defendant's motion to dismiss, the court noted: "The conclusion is inescapable on this record that the government brought the marihuana charge in retaliation for the appellant's exercise of his statutory rights on the cocaine charge." *Id.*

In this case, unlike *Groves*, at the time the Government filed the Superseding Indictment, on November 18, 2020, Defendant Wasserman had filed one discovery motion (Dkt. 53) but had not filed any dispositive motions. The record does not support Defendant Wasserman's argument that the Government filed the Superseding Indictment in retaliation for his exercise of any statutory or constitutional rights. Thus, in marked contrast with *Groves*, the pretrial motion practice in this case and Defendant Wasserman's stated intention to aggressively contest the charges do not give rise to a presumption of vindictiveness. *See, e.g.*, *Goodwin*, 457 U.S. at 381 (explaining that

13

because "a defendant before trial is expected to invoke procedural rights that inevitably impose some 'burden' on the prosecutor," "[i]t is unrealistic to assume that a prosecutor's probable response to such motions is to seek to penalize and to deter").

In sum, Defendant Wasserman's stated intention to vigorously contest the charges against him, without more, is insufficient to raise a presumption of vindictiveness. Defendant Wasserman has not identified any special or unique facts that would show that the pretrial motion practice in this case "was so caustic that it could be expected to cause the prosecutor to behave improperly." *Barner*, 441 F.3d at 1320.

### C. Request for Discovery

Defendant Wasserman alternatively seeks to conduct discovery regarding his selective prosecution and vindictive prosecution claims. (Dkt. 84 at 22.) "[I]n order to obtain discovery of [a selective prosecution] claim, a defendant must provide 'some evidence tending to show the existence of the essential elements of the defense.'" *Jordan*, 635 F.3d at 1188 (quoting *Armstrong*, 517 U.S. at 468). In *Armstrong*, the Court explained that "[t]he justifications for a rigorous standard for the elements of a selective-prosecution claim . . . require a correspondingly rigorous standard for a discovery in aid of such a claim because:

> [i]f discovery is ordered, the Government must assemble from its own files documents which might corroborate or refute the defendant's claim. Discovery thus imposes many of the costs present when the Government must respond to a prima facie case of selective prosecution. It will divert prosecutors' resources and may disclose the Government's prosecutorial strategy.

14

*Armstrong*, 517 U.S. at 468.

The Court finds that Defendant Wasserman has not met the rigorous standard for discovery regarding his selective prosecution claim because he has not presented "some evidence tending to show the existence of" both elements of his claim, i.e., discriminatory effect and discriminatory purpose, as discussed above.  Nor has he presented any "facts sufficient to create a reasonable doubt about the constitutionality of [this] prosecution."  *Jordan*, 635 F.3d at 1188 (quotations omitted).  Similarly, he has not pointed to any facts that raise a reasonable likelihood of vindictiveness such that discovery is warranted in support of his claim of vindictive prosecution.  *See United States v. Sanders*, 211 F. 3d 711, 717 (2d Cir. 2000) (finding standard for obtaining discovery in a vindictive prosecution case was the same as in a selective prosecution case, that is, "a defendant must provide 'some evidence tending to show the existence of the essential elements of the defense'" and noting that the standard was "a 'rigorous' one"); *United States v. Lanoue*, 137 F. 3d 656, 665 (1st Cir. 1998) (noting that "generally where a defendant can point to specific facts that raise a likelihood of vindictiveness a district court must grant an evidentiary hearing on the issue"); *United States v. Dean*, 119 F. Supp. 2d 81, 84 (D. Conn. 2000) ("Absent 'some evidence' that this federal prosecution was brought with 'genuine animus' to punish the defendant or retaliate against him based on his decision to decline the state prosecutor's plea offer, [the defendant was] not entitled to discovery or an evidentiary hearing on his claim of vindictive prosecution.").

Accordingly, it is recommended that Defendant Wasserman's request for discovery on his selective prosecution and vindictive prosecution claims be denied. *See, e.g.*, *Jordan*, 635 F.3d at 1189 (finding that the defendant "was not entitled to an evidentiary hearing or discovery on [his selective prosecution] claim" where the defendant "did not show that a single arrestee who was not prosecuted under the ACCA qualified for such prosecution, must less possessed a criminal history as substantial as his own"); *United States v. Williams*, No. 6:13-cr-00026-CEH-TBS-1, 2014 WL 12691747, at *4 (M.D. Fla. Apr. 21, 2014) ("Williams has failed to provide *any* evidence showing that the Government was motivated by Williams' wealth or socioeconomic status, or by the 'profit' it would derive from the sale of Williams' home."); *United States v. Gray*, No. 209-cr-13-FTM-29SPC, 2009 WL 1748550, at *1 (M.D. Fla. June 17, 2009) ("Nothing alleged in defendant's motion comes close to satisfying any component of the demanding standard for either discovery or dismissal based upon alleged selective prosecution.").

## CONCLUSION

Upon consideration, it is **RECOMMENDED** that Defendant Phillip Wasserman's Motion to Dismiss Counts Five, Six, and Ten of the Superseding Indictment, or in the Alternative for Discovery Regarding Selective and/or Vindictive Prosecution (Dkt. 84) be **DENIED**.

**IT IS SO REPORTED** in Tampa, Florida, on February 2, 2021.

JULIE S. SNEED
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

Copies furnished to:
The Honorable Charlene Edwards Honeywell
Counsel of Record