UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.  Case No.: 8:20-cr-207-T-36JSS

PHILLIP ROY WASSERMAN
_____/

## ORDER

THIS MATTER is before the Court on Defendant Phillip Wasserman's Motion to Quash (Dkt. 230), non-party Diane Wasserman's Motion to Quash Subpoenas (Dkt. 233) (collectively, "Motions"), the Government's Consolidated Response in Opposition to Motions to Quash (Dkt. 238), and non-party Diane Wasserman's Notice of Filing Supplemental Documents to Motion to Quash Subpoenas (Dkt. 242) and Reply (Dkt. 243). On September 29, 2021, the Court conducted a hearing on the Motions. For the reasons that follow, the Motions are denied.

## BACKGROUND

On June 23, 2020, a federal grand jury in the Middle District of Florida returned an Indictment charging Defendant Roy Wasserman ("Defendant") and Defendant Kenneth Murray Rossman ("Defendant Rossman") with conspiracy to commit wire fraud and mail fraud (Count One); wire fraud (Counts Two through Four); and mail fraud (Counts Five through Seven). (Dkt. 1.) The Indictment was sealed pending the defendants' arrests, which occurred on June 26, 2020. (Dkts. 2, 3, 8, 9.)

1

On November 18, 2020, a federal grand jury in the Middle District of Florida returned a Superseding Indictment charging Defendant with conspiracy to commit wire fraud and mail fraud (Count One); wire fraud (Counts Two through Six); mail fraud (Counts Seven through Ten); tax evasion (Count Eleven); and fraud and false statements (Counts Twelve through Eighteen). (Dkt. 69.) The Superseding Indictment charges Defendant Rossman with conspiracy to commit wire fraud and mail fraud (Count One); wire fraud (Counts Two through Six); mail fraud (Counts Seven through Ten); tax evasion (Count Eleven); fraud and false statements (Counts Nineteen through Twenty-One); and aiding and assisting fraud and false statements (Counts Twenty-Two and Twenty-Three). (*Id.*)

Defendant is a former attorney and a licensed insurance agent. (*Id.* ¶ 1.) The allegations in the Superseding Indictment involve an insurance business known as FastLife Insurance Company ("FastLife"), which Defendant founded, as well as other companies Defendant owns. (*Id.* ¶¶ 1–8). According to the Superseding Indictment, as early as August 2016, and continuing through at least July 16, 2020, Defendant solicited at least $6.3 million from victim-investors in a "Ponzi-like" scheme to make payments to earlier investors in FastLife and other companies Defendant owned and to finance Defendant's lifestyle. (*Id.*)

On August 19, 2021, an agent from the Internal Revenue Service ("IRS") served Defendant's wife and son, Diane and Michael Wasserman, with two subpoenas dated July 16, 2021. (Dkt. 230 at 3; Dkt. 238-1 ¶ 14.) The subpoenas seek access to records in various accounts held by JP Morgan Chase Bank, N.A. and PNC Bank, N.A. (Dkt.

2

230-1 at 3–5; Dkt. 230-2 at 3–5; Dkt. 230-3 at 3–5.) The subpoena to JP Morgan Chase seeks financial records of accounts belonging to Ms. Wasserman and Michael Wasserman. (Dkt. 230-1 at 3–5; Dkt. 230-2 at 3–5.) The subpoena to PNC Bank seeks financial records of accounts belonging to Ms. Wasserman and Phillip Roy Financial Consultants, LLC. (Dkt. 230-3 at 3–5.) Included with each subpoena is a cover letter, titled "Re: Customer Notice," drafted by the United States Attorney's Office, informing Ms. Wasserman and Michael Wasserman that their financial records were being sought by the United States Attorney's Office for the Middle District of Florida, and the IRS, in accordance with the Right to Financial Privacy Act of 1978, 12 U.S.C. §§ 3401–3422 (the "RFPA"). (Dkt. 230-1 at 1–2; Dkt. 230-2 at 1–2; Dkt. 230-3 at 1–2.) The letters further provide that the records are being sought for the following purpose:

> to identify all accounts in the name of any person(s) or entity(ies) other than the name of defendant Phillip Roy Wasserman which are being or have recently been used by defendant Wasserman; to discover the nature, amount(s), and circumstances surrounding the transactions effectuated by defendant Wasserman using said account(s); to identify any and all income or other compensation paid to defendant Wasserman and, if any, the source(s) and amount(s) of same reflected in said account(s); to identify any and all expenditures made by defendant Wasserman and, if any, the payee(s) and amount(s) of same as reflected in said account(s); and otherwise to develop [a] comprehensive picture of defendant Wasserman's financial status post-indictment, including, but not limited to, any efforts to satisfy his outstanding tax obligations.

(Dkt. 230-1 at 1; Dkt. 230-2 at 1; Dkt. 230-3 at 1.) Additionally, the letters informed Ms. Wasserman and Michael Wasserman of the procedures to follow if they wished

3

to file an objection to the subpoenas. (Dkt. 230-1 at 1–2; Dkt. 230-2 at 1–2; Dkt. 230-3 at 1–2.)

On September 9, 2021, Defendant and Ms. Wasserman moved to quash the subpoenas. (Dkts. 230, 233.) In his Motion, Defendant objects to the inquiry into his wife and son's financial records on the grounds that the documents subpoenaed "are not relevant or admissible evidence regarding the charges against Mr. Wasserman in this case and are not necessary for the government to prepare for trial"; "the Subpoenas lack specificity and are instead an impermissible fishing expedition"; and "the Subpoenas are an improper attempt to obtain information about Mr. Wasserman's current financial affairs in order to interfere with his Sixth Amendment right to counsel." (Dkt. 230 at 1–2.) In her Motion, Ms. Wasserman "adopts the motion filed by her husband, Phillip Wasserman" and objects on the grounds that "the government is on a fishing expedition"; "the Subpoenas are being improperly used as a discovery device"; and the Fifth Amendment requires the quashing of the subpoenas. (Dkt. 233 at 3–9.)

In response to Defendant's Motion, the Government contends that the Motion is untimely, and Defendant lacks standing to object to the subpoenas because he is not a "customer" of the financial institution for which the subpoenas were directed. (Dkt. 238 at 1.) The Government further contends that the Motion should be denied as "the records sought are relevant to a legitimate law enforcement inquiry." (*Id.* at 1, 5–13.)

In response to Ms. Wasserman's Motion, the Government contends that the Motion should be denied because she did not follow the proper procedures when

4

objecting to the subpoena under 12 U.S.C. § 3210, and because the Government and the IRS have a legitimate law enforcement inquiry and the records are relevant to that inquiry.  (Dkt. 238 at 1, 8–9.)

## APPLICABLE STANDARDS

The Right to Financial Privacy Act of 1978, 12 U.S.C. §§ 3401–3422 was enacted by Congress following the Supreme Court's ruling in *United States v. Miller*, 425 U.S. 435 (1976), in which the Court held that bank customers have no Fourth Amendment right to privacy for financial information held by financial institutions. *See S.E.C. v. Jerry T. O'Brien, Inc.*, 467 U.S. 735, 745 (1984); *Presley v. United States*, 895 F.3d 1284, 1292 (11th Cir. 2018).  The RFPA "fill[s] the gap left by the ruling in *Miller*" by (1) permitting challenges by customers of financial institutions to government subpoenas and (2) operating as a mechanism for the government to obtain financial banking information.  *Jerry T. O'Brien, Inc.*, 467 U.S. at 745 & n.15; 12 U.S.C. § 3410(a).  The RFPA's requirements and limitations are strictly construed, and "[p]erhaps most importantly, the statute is drafted in a fashion that minimizes the risk that customers' objections to subpoenas will delay or frustrate agency investigations." *Jerry T. O'Brien, Inc.*, 467 U.S. at 745.

As noted above, the RFPA establishes specific procedures that a "Government authority" must follow when seeking to subpoena financial records from financial institutions.  12 U.S.C. § 3403(b).  The Government may obtain these records "only if . . . there is a reason to believe that the records sought are relevant to a legitimate law

enforcement inquiry.'"[1]  12 U.S.C. § 3405.  The RFPA further requires that "customers" receive a written notice of the Government's intent to obtain financial records, an explanation of the purpose for which the records are sought, and a statement setting forth the procedures a customer must follow if they wish to challenge the subpoena.[2]  12 U.S.C. §§ 3405–3408 (notice requirements); 12 U.S.C. § 3410 (customer challenges).

The RFPA provides "the sole judicial remedy . . . to oppose disclosure of financial records."  12 U.S.C. § 3410(e).  Under the RFPA, a customer may file a motion to quash a subpoena for bank records "[w]ithin ten days of service or within fourteen days of mailing of a subpoena, summons, or formal written request."  12 U.S.C. § 3410(a).  The motion must include a sworn statement stating (1) that the movant is a customer of the financial institution from which the records are being sought and (2) the customer's "reasons for believing that the financial records sought are not relevant to the legitimate law enforcement inquiry stated by the Government authority in its notice, or that there has not been substantial compliance with the [RFPA]."  12 U.S.C. § 3410(a)(1)–(2).

---

[1] The RFPA defines a "law enforcement inquiry" as "a lawful investigation or official proceeding inquiring into a violation of, or failure to comply with, any criminal or civil statute or any regulation, rule, or order issued pursuant thereto."  12 U.S.C. § 3401(8).

[2] The RFPA defines a "customer" as "any person or authorized representative of that person who utilized or is utilizing any service of a financial institution, or for whom a financial institution is acting or has acted as a fiduciary, in relation to an account maintained in the person's name."  12 U.S.C. § 3401(5).

After a motion has been filed, the RFPA provides three grounds on which the Court may quash a subpoena: "(1) the agency's inquiry is not a legitimate law enforcement inquiry or (2) the records requested are not relevant to the agency's inquiry or (3) the agency has not substantially complied with the RFPA." *Sandsend Fin. Consultants, Ltd. v. Fed. Home Loan Bank Bd.*, 878 F.2d 875, 882 (5th Cir. 1989). Conversely, the Court must deny the motion if it finds "that the applicant is not the customer to whom the financial records sought by the Government authority pertain, *or* that there is a demonstrable reason to believe that the law enforcement inquiry is legitimate and a reasonable belief that the records sought are relevant to that inquiry." 12 U.S.C. § 3410(c) (emphasis added). Indeed, standing to object is a required prerequisite to assert an objection to a subpoena governed by the RFPA. *See Sterling Knight Pharm. LLC v. U.S. Postal Serv.*, No. 8:19-mc-27-T-30AEP, 2019 WL 217836, at *1 (M.D. Fla. May 20, 2019) (noting that "the right to file a motion to quash an administrative subpoena under the RFPA belongs to customers"); *Fletcher v. Dep't of Justice*, No. 3:21-226-JFA-SVH, 2021 WL 2227974, at *2 (D. S.C. June 2, 2021) (denying movant's objection to subpoena for failing to satisfy Section 3410(a)(1)'s standing requirement).

## ANALYSIS

Defendants fail to satisfy the requirements of the RFPA and as a result, their Motions are due to be denied. First, Defendant lacks standing to object to the Government's subpoenas of Ms. Wasserman's and Michael Wasserman's financial records. As the record reflects, Defendant is not a "customer" as defined by the RFPA.

7

(Dkt. 238-1 ¶¶ 6–7, 9–12.) As Defendant is not a "customer" as defined by the RFPA, his Motion must be denied. *See* 12 U.S.C. § 3410(c) ("i]f the court finds that the applicant is not the customer to whom the financial records sought by the Government authority pertain . . . , it shall deny the motion"); *see also Crypto Traders Mgmt., LLC v. U.S. Sec. & Exch. Comm'n*, No. 1:20-mc-336-BLW, 2021 WL 665892, at *2 (D. Idaho Feb. 11, 2021) (denying an individual's challenge to a subpoena based on lack of standing after determining that he was not the account holder of the accounts at issue).

Second, even if Defendant had standing to object, his Motion is untimely. Section 3410(a) provides that a customer may file a motion to quash a subpoena, but that such motion be filed within ten days of personal service. 12 U.S.C. § 3410(a). Here, the parties agree that the subpoenas were personally served on August 19, 2021. (Dkt. 230 at 3; Dkt. 233 at 9; Dkt. 238 at 5.) Therefore, pursuant to the statutory deadline of the RFPA, any motion to quash such subpoenas was due on or before August 30, 2021. 12 U.S.C. § 3410(a). Defendant's Motion, however, was not filed until September 9, 2021. (Dkt. 230.) Accordingly, Defendant failed to file the Motion within the statutory limitations period provided in 12 U.S.C. § 3410. *See Mandel & Mandel LLP v. U.S. Sec. & Exch. Comm'n*, No. 09-21430-MC, 2009 WL 10711960, at *2 (S.D. Fla. Sept. 22, 2009) (finding that movant's motion to quash subpoena was untimely under 12 U.S.C. § 3410 and noting that "the weight of authority supports a finding that the limitations period is jurisdictional").

Third, even if Defendant's Motion was timely and he had standing to object to the subpoenas, his Motion is nevertheless denied because the inquiry by the United

States Attorney's Office for the Middle District of Florida and the IRS is a legitimate law enforcement inquiry. 12 U.S.C. § 3410(c). Indeed, the Government submitted the affidavit of Shawn Batsch, a special agent with the Criminal Investigation Division of the IRS in support of the subpoenas. (Dkt. 238-1.) Agent Batsch provided factual support for the allegation that Defendant has been evading his 2009 federal tax obligations by using accounts belonging to others. (*Id.* ¶¶ 4–13.) Agent Batsch's affidavit is sufficient to establish that the Government's inquiry constitutes a legitimate law enforcement inquiry. *See* 12 U.S.C. § 3401(8); *see also Falls v. Dep't of Defense*, No. 5:16-mc-2-MW-GRJ, 2017 WL 990586, at *1–2 (N.D. Fla. Feb. 9, 2017) (finding that a legitimate law enforcement inquiry was established after considering the representations made in a special agent's affidavit).

Moreover, the records subpoenaed are relevant to the law enforcement inquiry. "For purposes of an administrative subpoena, the notion of relevancy is a broad one." *Flatt v. U.S. S.E.C.*, No. 10-60073-MC, 2010 WL 1524328 at *4 (S.D. Fla. Apr. 14, 2010) (quoting *Sandsend*, 878 F.2d at 882). Subpoenaed information is relevant if the requested material "touches a matter under investigation." *Sandsend*, 878 F.2d at 882 (citations omitted). In this case, the financial records pertaining to Ms. Wasserman's and Michael Wasserman's accounts are relevant to the investigation into Defendant's alleged fraudulent activity. (Dkt. 238-1 ¶¶ 4–13.)

Ms. Wasserman's Motion is also untimely. As noted above, pursuant to the limitations period of Section § 3410(a), Ms. Wasserman's motion was due on or before August 30, 2021. Her Motion, however, was not filed until September 9, 2021. (Dkt.

233.) To the extent she contends that the Government granted her an extension of time to file her Motion, courts in this Circuit have held that the jurisdictional nature of 12 U.S.C. § 3410 cannot be waived. *Mandel*, 2009 WL 10711960, at *2 (finding movant's motion untimely under 12 U.S.C. § 3410 and noting that movant was "not entitled to equitable relief on the basis of estoppel, waiver, or equitable tolling"); *see also Jerry T. O'Brien*, 467 U.S. at 745 (noting that "[a] customer's ability to challenge a subpoena is cabined by strict procedural requirements" and "the statute is drafted in a fashion that minimizes the risk that customers' objections to subpoenas will delay or frustrate agency investigations").

Moreover, even if Ms. Wasserman's Motion was timely, it fails under the RFPA. As the RFPA provides, the Government may obtain financial records pursuant to an administrative subpoena only if: "(1) 'there is a reason to believe that the records sought are relevant to a legitimate law enforcement inquiry', and (2) the Government serves the customer with a copy of the subpoena and a notice of their opportunity to challenge it, utilizing detailed procedures outlined in Section 3405." *Thomas v. United States Dep't of Interior*, No. 2:17-cv-405-FtM-99MRM, 2017 WL 3172407, at *4 (M.D. Fla. July 24, 2017) (quoting 12 U.S.C. § 3405).

Here, based on the information provided by the parties, the Court finds that the Government and the IRS complied with the provisions of the RFPA. Indeed, as noted above, the subpoenas for Ms. Wasserman's and Michael Wasserman's financial records were prepared in furtherance of the IRS's investigation, which is further detailed in Special Agent Batsch's affidavit. (Dkt. 238-1 ¶¶ 4–13.) Moreover, both

10

Ms. Wasserman and Michael Wasserman were personally served with notice of the subpoenas, and were provided instructions and the opportunity to object. (Dkt. 230-1 at 1–2; Dkt. 230-2 at 1–2; Dkt. 230-3 at 1–2.) Accordingly, no basis exists to quash the subpoenas at issue.

Upon consideration, it is **ORDERED**:

1) Defendant Phillip Wasserman's Motion to Quash Subpoenas (Dkt. 230) is **DENIED**.

2) Non-party Diane Wasserman's Motion to Quash Subpoenas (Dkt. 233) is **DENIED**.

3) The subpoenas shall be enforced. 12 U.S.C. § 3410(c).

**DONE** and **ORDERED** in Tampa, Florida, on October 5, 2021.

_____
JULIE S. SNEED
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
    Counsel of Record
    Kevin Napper, Esq.
       (attorney for non-party movant Diane Wasserman)