# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

UNITED STATES OF AMERICA

v.  Case No.: 8:20-cr-207-CEH-JSS

PHILLIP ROY WASSERMAN
_____/

## ORDER

This cause comes before the Court upon the Report and Recommendation filed by United States Magistrate Judge Julie S. Sneed (Doc. 122). In the R&R, Magistrate Judge Sneed recommends denying Defendant Phillip Wasserman's Motion to Dismiss Counts Five, Six and Ten of the Superseding Indictment, or in the Alternative for Discovery Regarding Selective and/or Vindictive Prosecution. Doc. 122 at 17.

All parties were furnished copies of the R&R and were afforded the opportunity to file objections, in accordance with 28 U.S.C. § 636(b)(1). Defendant Phillip Roy Wasserman filed an Objection to the Magistrate Judge's Report and Recommendation (Doc. 128). The Government did not respond to the Objection. Upon consideration of the R&R and this Court's independent examination of the file, the Court will overrule the objection and adopt the R&R.

### I.  BACKGROUND

On June 23, 2020, a federal grand jury in the Middle District of Florida returned an indictment that charged Defendant Phillip Roy Wasserman with conspiracy to commit wire fraud and mail fraud (Count One); wire fraud (Counts Two through

Four); and mail fraud (Counts Five through Seven). Doc. 1 at 1–16. Months after his arrest, a federal grand jury in the Middle District of Florida returned a superseding indictment that charges Wasserman with conspiracy to commit wire fraud and mail fraud (Count One); wire fraud (Counts Two through Six); mail fraud (Counts Seven through Ten); evasion of payment of income taxes (Count Eleven); and fraud and false statements (Counts Twelve through Eighteen). Doc. 69 at 1–25.

Counts Five, Six, and Ten of the Superseding Indictment are relevant here. Count Five alleges that Wasserman and Co-Defendant Kenneth Murray Rossman[1] devised a scheme to obtain money and property by false and fraudulent pretenses, representations, and promises and that Wasserman executed this scheme when, on November 19, 2019, he wired $960 from a bank account in the name of Phillip Roy Financial Consultants, LLC to an account belonging to L.A., a victim-investor. *Id.* at 11–13. Similarly, Count Six alleges that Wasserman executed this scheme when, on December 6, 2019, he wired $1,300 from a bank account in the name of Phillip Roy Financial Consultants, LLC to an account belonging to R.L., another victim-investor. *Id.* Count Ten alleges that Wasserman executed the scheme when, on July 16, 2020, he sent a purported interest check in the amount of $490 to S.C., also a victim-investor, via FedEx. *Id.* at 14–16.

---

[1] In June of 2021, the Government filed a superseding information charging Rossman with conspiracy (Count One) and aiding and assisting fraud and false statement (Count Two). Doc. 175 at 1, 10. Following the filing of a plea agreement for Rossman as to Count One and Count Two of the Superseding Information (Doc. 178), the Magistrate Judge recommended that the Court accept Rossman's plea of guilty to Count One and Count Two. Doc. 193 at 1. Rossman's sentencing is currently scheduled for April 28, 2022. Doc. 255 at 2.

Wasserman moved to dismiss Counts Five, Six, and Ten of the Superseding Indictment or, alternatively, for "discovery regarding the facts necessary to show this is a selective and vindictive prosecution." Doc. 84 at 1–2. In seeking dismissal of Counts Five, Six, and Ten, Wasserman argued that the Government has selectively and vindictively prosecuted Wasserman for the conduct alleged in those counts, thus violating equal protection and due process. *Id.* at 13–14. Wasserman argued first that the Court should dismiss Counts Five, Six, and Ten because the Government selectively charged those counts. *Id.* at 15–18. In support, Wasserman asserted that the Government prosecutes him for simply returning funds to purported victims of his alleged fraud and that the decision to charge him with a crime for conduct that is typically rewarded is premised upon his assertion of his First Amendment rights through his activism on behalf of the insurance industry and against industry regulation. *Id.* at 17.

Wasserman also argued that the Court should dismiss Counts Five, Six, and Ten because the Government vindictively charged those counts. *Id.* at 18–22. In support, Wasserman contended that the Superseding Indictment followed his exercise of his pretrial rights and that he had established a factual showing demonstrating a likelihood of vindictiveness. *Id.* at 19. He also argued that the Government's purported awareness of his payments to the investors before the initial indictment reinforced his argument that Counts Five, Six, and Ten were charged vindictively. *Id.* at 19–21. And he claimed that the Government's charging decision was calculated to deter him from issuing additional payments to investors upon the availability of funds. *Id.* at 21–22.

3

Finally, Wasserman argued that, should the Court determine that he did not sufficiently establish that the prosecution was selective or vindictive, the Court should allow him to take discovery relevant to his selective prosecution and vindictive prosecution arguments. *Id.* at 22.

The Government responded in opposition (Doc. 101), and the Magistrate Judge held a hearing on the motion (Doc. 106). The R&R followed, in which the Magistrate Judge recommends denying the motion. Doc. 122 at 17. Wasserman now objects to the R&R (Doc. 128).

## II.    LEGAL STANDARD

Congress vested Article III judges with the power to "designate a magistrate judge to hear and determine any pretrial matter pending before the court," subject to various exceptions. 28 U.S.C. § 636(b)(1)(A). Magistrate judges have the authority to submit proposed findings of fact and recommendations for disposition by an Article III judge. *Id.* § 636(b)(1)(B). When a party makes a timely and specific objection to a magistrate judge's report and recommendation, the district judge "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id.* § 636(b)(1)(C). *See also* Fed. R. Crim. P. 59(b)(3). In the absence of specific objections, there is no requirement for a district judge to review factual findings *de novo*, *Garvey v. Vaughn*, 993 F.2d 776, 779 n.9 (11th Cir. 1993). The district judge may accept, reject, or modify, in whole or in part, the findings and recommendations. 28 U.S.C. § 636(b)(1)(C); Fed. R. Crim. P. 59(b)(3). The district judge must review legal conclusions *de novo*. *See Cooper-Houston*

*v. S. Ry. Co.*, 37 F.3d 603, 604 (11th Cir. 1994); *Ashworth v. Glades Cnty. Sch. Bd. of Cnty. Comm'rs*, 379 F. Supp. 3d 1244, 1246 (M.D. Fla. 2019). Finally, objections to a report and recommendation must be "specific" and "clear enough to permit the district court to effectively review the magistrate judge's ruling." *Knezevich v. Ptomey*, 761 F. App'x 904, 906 (11th Cir. 2019) (internal quotation marks omitted).

### III.     ANALYSIS

In objecting to the R&R, Wasserman raises three arguments: (1) he has set forth a selective-prosecution claim; (2) he has set forth a vindictive-prosecution claim; and (3) alternatively, the Court should at least grant limited discovery to him on the issues of selective prosecution and vindictive prosecution. Doc. 128 at 2–5. The Government did not respond. The Court will address these arguments in the order in which Wasserman raises them.

#### A. The Court Will Overrule Wasserman's Selective-Prosecution Objection

Wasserman challenges the Magistrate Judge's recommendation for the Court to reject Wasserman's selective-prosecution claim. The Court will overrule this objection.

"[S]o long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion." *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978). But a prosecutor's discretion is subject to constitutional constraints. *United States v. Armstrong*, 517 U.S.

5

456, 464 (1996). One of these constraints, which the equal protection component of the Due Process Clause of the Fifth Amendment imposes, is that "the decision to prosecute may not be based on an unjustifiable standard such as race, religion, or other arbitrary classification." *Id.* (internal quotation marks omitted).

"[A] presumption exists that a prosecutor has not violated equal protection principles . . . ." *United States v. Brantley*, 803 F.3d 1265, 1271 (11th Cir. 2015). A defendant seeking to establish that he is "being selectively prosecuted in an unconstitutional manner . . . bear[s] a 'demanding' burden." *United States v. Jordan*, 635 F.3d 1181, 1188 (11th Cir. 2011) (citing *United States v. Smith*, 231 F.3d 800, 807 (11th Cir. 2000)). "[T]o dispel the presumption that a prosecutor has not violated equal protection, a criminal defendant must present *clear* evidence to the contrary." *Id.* (quoting *Smith*, 231 F.3d at 807) (emphasis in original). "Clear evidence sounds like more than just a preponderance, and evidence that is clear will be convincing." *Smith*, 231 F.3d at 808. Thus, a defendant must present clear evidence of a selective prosecution to overcome the presumption. *Brantley*, 803 F.3d at 1271.

A defendant asserting that he was selectively prosecuted "must show that the federal prosecutorial policy had a discriminatory effect and that it was motivated by a discriminatory purpose." *Id.* (internal quotation marks omitted). "In other words, a criminal defendant who claims []he was subjected to selective prosecution must establish two elements: (1) the discriminatory effect prong of this test requires a showing that 'similarly situated individuals were not prosecuted' . . . and (2) '[t]he discriminatory purpose prong requires that the decisionmaker selected or reaffirmed a

6

particular course of action at least in part because of, not merely in spite of, its adverse effects upon an identifiable group.'" *Id.* (alteration in original) (quoting *Jordan*, 635 F.3d at 1188).

The Magistrate Judge recommended rejecting Wasserman's selective-prosecution argument. In analyzing the discriminatory-effect prong, the Magistrate Judge explained that Wasserman's argument that the Government prosecuted him for returning funds to purported victims ignored that Counts Five, Six, and Ten allege the issuance of payments to victim-investors to execute or carry out a scheme to defraud. Doc. 122 at 7. The Magistrate Judge emphasized that the comparators to which Wasserman referred—individuals who merely returned funds to victims or issued payments in the regular course of business—were not similarly situated because that conduct, standing alone, is not equivalent to the offenses charged in Counts Five, Six, and Ten. *Id.* On this basis, the Magistrate Judge concluded that Wasserman failed to identify any individuals who had committed wire fraud or mail fraud in a similar manner as alleged in Counts Five, Six, and Ten but who were not charged. *Id.* at 7–8. Next, in analyzing the discriminatory-purpose prong, the Magistrate Judge explained that Wasserman's claim that he was targeted for federal prosecution as a member of an identifiable group was speculative. *Id.* at 8–10. As such, the Magistrate Judge recommended that the Court find that Wasserman failed to establish either component of his selective-prosecution claim.

In objecting to the Magistrate Judge's analysis of his selective-prosecution claim, Wasserman focuses on the discriminatory-effect prong of the analysis.

7

Contending that the Magistrate Judge "missed [his] point," Wasserman asserts the Government "never prosecutes an individual for mail fraud for sending a court approved contractually obligated payment to an investor." Doc. 128 at 2. Wasserman likens this action to a scenario in which the Government indicts him for stating that the "sky is blue" as a false and fraudulent statement and the Court denies his motion for failing to identify any individual who committed such conduct and was not prosecuted. *Id.* at 2–3. According to Wasserman, he would have failed to identify any individual in that scenario because the Government never prosecutes an individual for such a statement. *Id.* Wasserman contends that the same is true here—the Government "does not prosecute individuals for making contractually obligated payments to individuals." *Id.* Thus, Wasserman "essentially point[s] to the entire universe of federal defendants who have made contractually obligated payments to investors after having been charged with fraud," claiming that "the United States has never found such a payment rose to the level of criminal conduct worthy of a federal indictment." *Id.* at 3.

This argument is unavailing. Wasserman elected to raise this selective-prosecution claim. In doing so, he carries a "demanding" burden to rebut the presumption that the Government violated equal protection principles in bringing the charges in Counts Five, Six, and Ten. Satisfying that demanding burden requires, in part, demonstrating by clear evidence that a similarly situated individual was not prosecuted. *See Brantley*, 803 F.3d at 1271 ("[I]t was incumbent upon [the defendant] to show by clear evidence that a similarly situated individual was not prosecuted for misprision."). "A similarly situated person for selective prosecution purposes [is] one

8

who engaged in the same type of conduct, which means that the comparator committed the same crime in substantially the same manner as the defendant . . . and against whom the evidence was as strong or stronger than that against the defendant." *Id.* at 1271–72 (internal quotation marks omitted). But Wasserman did not identify, or provide clear evidence of, a similarly situated individual who was not prosecuted. Instead, Wasserman argues in his motion that "the prosecution of a defendant for returning funds to purported victims of the defendant's alleged fraud" was "extraordinary" and impliedly asked the Court to take notice "based on its own experience, as well as the experience of counsel, of the rarity of such a prosecution." Doc. 84 at 16. In finding Wasserman's comparator argument lacking, the Magistrate Judge correctly recognized that an individual who merely returns funds to victims or issues payments in the ordinary course of business is not similarly situated to Wasserman because that conduct, standing alone, is not equivalent to the offenses charged in Counts Five, Six, and Ten. Indeed, those counts charge Wasserman with executing a scheme to defraud by mailing or wiring funds to victim-investors. Doc. 69 at 11–16.

Wasserman's assertions now that the Government "does not prosecute individuals for making contractually obligated payments" and that he "essentially point[s] to the entire universe of federal defendants who have made contractually obligated payments to investors after having been charged with fraud," as the Government "has never found such a payment rose to the level of criminal conduct worthy of a federal indictment," do not upend the Magistrate Judge's well-reasoned

9

findings and conclusions. Again, a selective-prosecution claim requires demonstrating by clear evidence that the Government did not prosecute a similarly situated individual. Wasserman has not provided clear evidence of a similarly situated individual who was not prosecuted. Counts Five, Six, and Ten charge Wasserman with executing a scheme to defraud by mailing or wiring funds to victim-investors, which is distinguishable from federal defendants who purportedly issue contractually obligated payments to investors after being charged with fraud, regardless of the Government's treatment of those payments. This objection seemingly invites the Court to excuse the prerequisite of clear evidence of a similarly situated individual on the basis that the Government purportedly does not prosecute the group of individuals identified by Wasserman. The Court declines this invitation.

Wasserman also argues that he established a selective-prosecution claim "[f]or the reasons outlined in his motions." Doc. 128 at 3. This argument is unpersuasive, as Wasserman fails to raise a specific objection and only repeats arguments made before the Magistrate Judge. Finally, to the extent that Wasserman argues that he at least has demonstrated that the Court must grant limited discovery, the Court addresses that objection below. Therefore, the Court will overrule this objection.[2]

---

[2] In objecting to the Magistrate Judge's selective-prosecution analysis, Wasserman also argues in passing that the Government "never prosecutes individuals for mail fraud for sending a *court approved* contractually obligated payment to an investor." Doc. 128 at 2 (emphasis added). Another magistrate judge held that the Release Order (Doc. 26) does not authorize Wasserman to issue contractually obligated payments to investors to the extent that those payments constitute wire fraud or any other crime. Doc. 113 at 2. The Court overruled Wasserman's objections to that order. As such, to the extent that Wasserman objects on the

### B. The Court Will Overrule Wasserman's Vindictive-Prosecution Objection

Wasserman challenges the Magistrate Judge's recommendation for the Court to reject Wasserman's vindictive-prosecution claim. The Court will overrule this objection, too.

A prosecutor may seek a superseding indictment at any time before trial on the merits, provided that the purpose is not to harass the defendant. *United States v. Barner*, 441 F.3d 1310, 1315 (11th Cir. 2006). Generally, where a prosecutor has probable cause to believe that the accused has committed a crime, courts lack authority to interfere with the decision to prosecute. *Id.* However, "a superseding indictment adding new charges that increase the potential penalty would violate due process if the prosecutor obtained the new charges out of vindictiveness." *Id.* "Vindictiveness in this context means the desire to punish a person for exercising his rights." *Id.*

"[I]n certain cases in which action detrimental to the defendant has been taken after the exercise of a legal right," the Supreme Court has found that "presuming" an "improper vindictive motive" is necessary; however, given the severity of this presumption, the Supreme Court "has done so only in cases in which a reasonable likelihood of vindictiveness exists." *United States v. Goodwin*, 457 U.S. 368, 373 (1982). In *Goodwin*, the Supreme Court left open the possibility that a defendant not entitled to a presumption of vindictiveness may be able to show actual vindictiveness by

---

basis that the Release Order "approve[s]" of certain payments that constitute wire fraud or any other crime, that argument is not persuasive.

11

showing "objectively that the prosecutor's decision was motivated by a desire to punish him for doing something that the law plainly allowed him to do." *Id.* at 384; *Barner*, 441 F.3d at 1322.

Although a prosecutor's decision to pursue heightened charges after a successful post-trial appeal is sufficient to invoke a presumption of vindictiveness, "proof of a prosecutorial decision to increase charges after a defendant has exercised a legal right does not alone give rise to a presumption in the *pretrial* context." *Barner*, 441 F.3d at 1316 (internal quotation marks omitted) (emphasis in original). The Eleventh Circuit has "neither adopted nor rejected a per se rule that the presumption of vindictiveness cannot apply in a pre-trial setting." *Id.* at 1318. But the mere fact that a defendant has filed pretrial motions is insufficient to raise a presumption of prosecutorial vindictiveness. *Id.* at 1319.

The Magistrate Judge explained that Wasserman failed to show that the addition of Counts Five, Six, and Ten was vindictive. Doc. 122 at 11. The Magistrate Judge observed that Wasserman based his vindictive-prosecution argument on his expression of his intent to aggressively contest the charges and highlighted that Wasserman also argued that the Government did not file the Superseding Indictment until after he began to aggressively contest the charges. *Id.* In addition to emphasizing that pretrial motions do not raise a presumption of prosecutorial vindictiveness, the Magistrate Judge indicated that the Government's knowledge of facts surrounding the alleged scheme to defraud at the time when the Government filed the initial indictment did not show that the Government acted vindictively in adding Counts Five, Six, and

Ten, as those counts are based upon Wasserman's alleged defrauding of different victims than those identified in the initial indictment. *Id.* After distinguishing two cases relied upon by Wasserman, including *United States v. Jenkins*, 504 F.3d 694 (9th Cir. 2007), the Magistrate Judge concluded that Wasserman's stated intention to vigorously contest the charges against him, without more, did not sufficiently raise a presumption of vindictiveness. *Id.* at 12–14.

Wasserman takes issue with the Magistrate Judge's finding that he did not identify the type of "unusual situation" that gave rise to a presumption of vindictiveness in *Jenkins*. Wasserman contends that this action "is even more unusual than the facts in *Jenkins*." Doc. 128 at 4. In support, Wasserman reiterates that he was contractually obligated to issue payments to investors and that Counts Five, Six, and Ten charge Wasserman with wire fraud and mail fraud for sending contractually obligated payments to investors. *Id.* He asserts that "there can be no intent to cause a loss to an individual when [his] conduct is sending money to these very individuals, but [he] was indicted for such conduct." *Id.* Because he deems this conduct "exceedingly unusual," contrary to the Magistrate Judge's finding, he concludes that a presumption of vindictiveness exists. *Id.*

This argument is unavailing. The Magistrate Judge performed a detailed analysis of *Jenkins*—not binding authority—and found the case distinguishable. Indeed, the Ninth Circuit in *Jenkins* found that the case presented an "unusual situation" because the Government's alien-smuggling case, which the Government brought against the defendant only after she testified at her drug-smuggling trial, was

13

"essentially open and shut" before she testified. 504 F.3d at 700. The Government had admitted that it unquestionably "had enough to go forward" and could have initiated charges before her testimony. *Id.* Wasserman's assertion that this action is "even more unusual" than *Jenkins* because the Government charged him in Counts Five, Six, and Ten for sending contractually obligated payments to investors does not demonstrate a presumption of vindictiveness. The Magistrate Judge correctly recognized that, unlike *Jenkins*, the Government in this action does not admit that it had the ability to file Counts Five, Six, and Ten when it filed the initial indictment.

Notably, Wasserman does not challenge that finding now, nor does he challenge the Magistrate Judge's finding that the record does not support Wasserman's argument that the Government filed the Superseding Indictment in retaliation for his exercise of any statutory or constitutional rights. Instead, he asserts only that the facts of this action are "unusual" in light of the contractually obligated payments. Again, Counts Five, Six, and Ten charge Wasserman with executing a scheme to defraud by mailing or wiring funds to victim-investors. Despite arguing that a presumption of vindictiveness exists, he fails to explain why the purportedly unusual facts show that he has raised a realistic likelihood of vindictiveness. Wasserman's arguments do not provide a basis to depart from the Magistrate Judge's thorough and well-reasoned recommendation here. To the extent that Wasserman argues that he at least has demonstrated that the Court must grant limited discovery, the Court addresses that objection below. Thus, the Court will overrule this objection.

### C. The Court Will Overrule Wasserman's Limited Discovery Objection

Finally, Wasserman argues that the Court should at least grant him limited discovery on his selective-prosecution and vindictive-prosecution claims. Doc. 128 at 5. The Court will overrule this objection.

To obtain discovery on a selective-prosecution claim, "a defendant must provide 'some evidence tending to show the existence of the essential elements of the defense." *Jordan*, 635 F.3d at 1188 (quoting *Armstrong*, 517 U.S. at 468).[3] "The justification for a rigorous standard for the elements of a selective-prosecution claim . . . . require a correspondingly rigorous standard for discovery in aid of such a claim." *Armstrong*, 517 U.S. at 468. As the parties and the Magistrate Judge recognized, this rigorous standard also applies when a defendant seeks discovery of a vindictive-prosecution claim. *See, e.g.*, *United States v. Sanders*, 211 F.3d 711, 717 (2d Cir. 2000); *United States v. Bucci*, 582 F.3d 108, 113–114 (1st Cir. 2009).

The Magistrate Judge recommended rejecting Wasserman's alternate request for discovery. Doc. 122 at 15. The Magistrate Judge explained that Wasserman fell short of the rigorous standard for discovery on his selective-prosecution claim because he failed to present some evidence tending to demonstrate the existence of both discriminatory effect and discriminatory purpose. *Id.* He also failed to present any facts sufficient to create a reasonable doubt about the prosecution's constitutionality. *Id.*

---

[3] And to obtain an evidentiary hearing on a selective-prosecution claim, "the defendant must present facts sufficient to create a reasonable doubt about the constitutionality of a prosecution." *Jordan*, 635 F.3d at 1188 (internal quotation marks omitted).

15

And he failed to highlight any facts raising a reasonable likelihood of vindictiveness such that discovery was warranted for his vindictive-prosecution claim. *Id.*

In arguing for his entitlement to discovery "[f]or the reasons outlined above," Wasserman contends that without this discovery, the Government can prosecute an individual "for the unheard of reason of sending an individual a contractually obligated payment" and "hide behind the fact that the [d]efendant can[not] point to someone 'similarly situated' because this type of situation NEVER occurs." Doc. 128 at 5.

The Court will overrule this objection. The Magistrate Judge recommended denying the discovery request because Wasserman neither presented evidence to show the existence of his selective-prosecution claim, nor pointed to any facts supporting his vindictive-prosecution claim. The Court agrees. In objecting now, Wasserman cites to "the reasons outlined above." *Id.* As discussed above, Wasserman points to the "entire universe of federal defendants" who have issued contractually obligated payments to investors after being charged with fraud in support of his selective-prosecution claim and he claims that the "unusual" situation in this action gives rise to a presumption of vindictiveness. *Id.* at 3–4. But these objections do not provide a basis for rejecting the Magistrate Judge's well-reasoned analysis, nor do they otherwise show that Wasserman has met the rigorous standard for discovery. And Wasserman's argument that denying discovery will enable the Government to prosecute individuals who issue contractually obligated payments without repercussions does not alter this conclusion. Therefore, the Court will overrule this objection.

## IV.  CONCLUSION

Accordingly, it is **ORDERED**:

1. Defendant Phillip Wasserman's Objection to the Magistrate Judge's Report and Recommendation (Doc. 128) is **OVERRULED**.

2. The Report and Recommendation of Magistrate Judge Julie S. Sneed (Doc. 122) is **ADOPTED**, **CONFIRMED**, and **APPROVED** in all respects and is made a part of this order for all purposes, including appellate review.

3. Defendant Phillip Wasserman's Motion to Dismiss Counts Five, Six, and Ten of the Superseding Indictment, or in the Alternative for Discovery Regarding Selective and/or Vindictive Prosecution (Doc. 84) is **DENIED**.

**DONE AND ORDERED** in Tampa, Florida on December 8, 2021.

*Charlene Edwards Honeywell*
Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record and Unrepresented Parties, if any