UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                             CASE NO: 8:20-cr-207-CEH-JSS

PHILLIP ROY WASSERMAN
_____/

## ORDER

Defendant Phillip Wasserman filed his Motion for Review of Cases Involving Investigating Agent (Dkt. 322) and Motion for *Brady/Giglio* Disclosure (Dkt. 375) (Motions), and the Government responded in opposition (Dkts. 337, 383). For the reasons that follow, the Motions are denied.

## BACKGROUND

On June 23, 2020, a federal grand jury in the Middle District of Florida returned an Indictment charging Defendant Roy Wasserman (Defendant) and Defendant Kenneth Murray Rossman (Defendant Rossman) with conspiracy to commit wire fraud and mail fraud (Count One); wire fraud (Counts Two through Four); and mail fraud (Counts Five through Seven). (Dkt. 1.) The Indictment was sealed pending the defendants' arrests, which occurred on June 26, 2020. (Dkts. 2, 3, 8, 9.)

On November 18, 2020, a federal grand jury in the Middle District of Florida returned a Superseding Indictment charging Defendant with conspiracy to commit wire fraud and mail fraud (Count One); wire fraud (Counts Two through Six); mail fraud (Counts Seven through Ten); tax evasion (Count Eleven); and fraud and false

1

statements (Counts Twelve through Eighteen). (Dkt. 69.) The Superseding Indictment also charges Defendant's co-defendant Kenneth Rossman with conspiracy to commit wire fraud and mail fraud (Count One); wire fraud (Counts Two through Six); mail fraud (Counts Seven through Ten); tax evasion (Count Eleven); fraud and false statements (Counts Nineteen through Twenty-One); and aiding and assisting fraud and false statements (Counts Twenty-Two and Twenty-Three). (*Id.*)

Defendant is a former attorney and a licensed insurance agent. (*Id.* ¶ 1.) The allegations in the Superseding Indictment involve an insurance business known as FastLife Insurance Company (FastLife), which Defendant founded, as well as other companies Defendant owns. (*Id.* ¶¶ 1–8). According to the Superseding Indictment, as early as August 2016, and continuing through at least July 16, 2020, Defendant solicited at least $6.3 million from victim-investors in a "Ponzi-like" scheme to make payments to earlier investors in FastLife and other companies Defendant owned and to finance Defendant's lifestyle. (*Id.*)

## ANALYSIS

**A. Motion for Review of Cases Involving Investigation Agent (Dkt. 322)**

In the Motion, Defendant requests that the court exercise its supervisory authority to require the "United States Department of Justice (DOJ) and Office of the Treasury Inspector General for Tax Administration (TIGTA) to initiate an independent review of all cases in which the investigating agent in this case, Internal Revenue Service (IRS) Special Agent Sean Batsch has participated in an investigation that resulted in a criminal prosecution." (Dkt. 322 at 1, 3.) Defendant contends that

2

he "fully expects" that such an investigation will result in material that should be disclosed to him under *Brady v. Maryland*, 373 U.S. 83 (1963) and *United States v. Giglio*, 405 U.S. 150, 154 (1972). (*Id.* at 1–2.)

In response, the Government maintains that "neither [Special Agent] Batsch nor any of the other investigators on this case have committed misconduct of any kind." (Dkt. 337 at 1.) As such, the Government argues that Defendant's request is speculative, "fails to make a single specific allegation of misconduct," and is "nothing more than a transparent attempt to delay the trial of this case and deflect attention from his own criminal conduct." (*Id.* at 2, 4, 5.) Moreover, the Government represents that despite Defendant's current allegations, several investigations into agent misconduct have "resulted in findings of no evidence to substantiate the defendant's allegations." (*Id.* at 6–8; Dkts. 337-1, 366, 366-1, 366-2.)

"Discovery in criminal cases is governed by the federal rules (Federal Rule of Criminal Procedure 16), statute (18 U.S.C. § 3500), and the common law (*Brady*, *Giglio*, and their progeny)." *United States v. Irizarry*, No. 6:14-cr-46-Orl-40TBS, 2014 WL 12641582, at *3 (M.D. Fla. Dec. 24, 2014). In *Brady v. Maryland*, the Supreme Court held that prosecutors must disclose exculpatory evidence that is material to a defendant's guilt or punishment. 373 U.S. at 87; *see United States v. Bagley*, 473 U.S. 667, 674 (1985) ("The holding in *Brady v. Maryland* requires disclosure only of evidence that is both favorable to the accused and material either to guilt or to punishment.") (internal punctuation and citation omitted). Additionally, in *United States v. Giglio*, the Supreme Court held that the prosecution's failure to disclose material impeachment

evidence violated the defendant's right to due process, warranting a new trial. 405 U.S. at 154. Thus, impeachment evidence falls within the *Brady* disclosure rule. *Id.*; *Bagley*, 473 U.S. at 676 ("This Court has rejected any such distinction between impeachment evidence and exculpatory evidence.").

However, the rule pronounced in *Brady* and its progeny is "not a discovery tool." *United States v. Sanchez*, No. 06-80171-cr, 2008 WL 11407282, at *2 (S.D. Fla. Oct. 6, 2008). Indeed, "[t]here is no general constitutional right to discovery in a criminal case, and *Brady* did not create one." *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977); *United States v. Arias-Izquierdo*, 449 F.3d 1168, 1189 (11th Cir. 2006) ("The rule regarding exculpatory evidence announced in *Brady* applies after trial when it is discovered that the prosecution had material information of which the defense was unaware."). The prosecution's duty to disclose exculpatory evidence does not "extend so far as to require disclosure of neutral, irrelevant, speculative, or inculpatory evidence." *United States v. Batiste*, No. 06-20373-cr, 2007 WL 9653064, at *1 (S.D. Fla. Sept. 1, 2007) (citing *United States v. Lindsey*, 482 F.3d 1285 (11th Cir. 2007)). Moreover, the "court is simply not required to ensure access to all government material in order that [a defendant] might be able to find something exculpatory for his case." *United States v. Davis*, 752 F.2d 963, 976 (5th Cir. 1985); *see Pennsylvania v. Ritchie*, 480 U.S. 39, 59 (1987) ("A defendant's right to discover exculpatory evidence does not include the unsupervised authority to search through the [Government's] files.").

4

Here, Defendant has not made a sufficient showing that the results of any future investigation would contain *Brady* or *Giglio* material. Rather, his sole argument is that he "fully anticipates" that an investigation into Special Agent Batsch would "uncover evidence of similar violations of the law" because "[a] law enforcement officer who is willing to commit multiple felonies in one case has almost certainly done so in past cases." (Dkt. 322 at 5.) This assertion, however, is speculative and is insufficient to support his request. *See, e.g.*, *United States v. Arias-Izquierdo*, 449 F.3d 1168, 1189 (11th Cir. 2006) (explaining that *Brady* cannot be "convert[ed] . . . into a discovery device" and that discovery should not be ordered "upon mere speculation" regarding whether it would contain exculpatory evidence); *United States v. Quinn*, 123 F.3d 1415, 1422 (11th Cir. 1997) (rejecting as speculative defendant's argument that the government should have been required to disclose the contents of personnel files that might contain exculpatory material or produce the files for the district court's inspection); *United States v. Navarro*, 737 F.2d 625, 630–32 (7th Cir. 1984) (holding district court properly refused to inspect or compel production of a witness file that may have contained impeachment material; "mere speculation [that a Government file may contain *Brady* material] would convert *Brady* into a discovery device and impose an undue burden upon the district court").

Moreover, Defendant fails to demonstrate any basis for the court to order the DOJ or TIGTA to initiate an investigation or prosecution. Defendant argues that "[i]f the government will not fulfill its obligation to investigate its agent's violations of the law of its own accord, the Court should direct the government to do so in order to

ensure that justice is done, preserve the integrity of the proceedings before it, and address the agent's illegal conduct." (Dkt. 322 at 6.) To the extent Defendant contends that the court may order such an investigation through its supervisory powers, that contention is without merit as "[t]he supervisory power comprehends authority for the courts to supervise their own affairs, not the affairs of the other branches." *See United States v. Struckman*, 611 F.3d 560, 576 (9th Cir. 2010) (quoting *United States v. Simpson*, 927 F.2d 1088 (9th Cir. 1991); *see also United States v. Cowan*, 524 F.2d 504, 513 (5th Cir. 1975) (noting that "[t]he Executive [branch] remains the absolute judge of whether a prosecution should be initiated"); *United States v. De Diego*, 511 F.2d 818, 824 (D.C. Cir. 1975) (noting that "[d]iscretion to prosecute remains with the prosecutor"). As such, the court declines to exercise its supervisory powers and Defendant's request is denied.

### B. Motion for *Brady/Giglio* Disclosure (Dkt. 375)

Pursuant to the principles of *Brady* and *Giglio*, Defendant seeks the disclosure of "all witnesses that IRS agents and the government influenced and tampered with by helping them with their IRS tax situations." (Dkt. 375 at 1.) In support of his request for these materials, Defendant references a letter from two investors in FastLife that Defendant contends demonstrates that "Agent Batsch personally resolv[ed] tax issues for government witnesses." (*Id.* at 1–2.) In light of this letter, Defendant argues: "[h]ow many other situations exist that the government has not disclosed? How many other people have the IRS agents in the case assisted in various matters like personal tax debts?" (*Id.* at 2.)

6

In response, the Government provides background as to these investors' investments in FastLife, how and why they reached out to Special Agent Batsch, and what actions Agent Batsch undertook with that information. (Dkt. 383 at 3–7.) The Government focuses its argument on its position that Agent Batsch's conduct "was not only appropriate, but also necessary to afford [the investors] the full panoply of rights to which they are entitled under the [Crime Victims' Rights Act]." (*Id.* at 7.)

As stated above, *Brady* and *Giglio* provide bases for Defendant to seek certain disclosures from the Government. *Brady* and *Giglio*, however, do not create a general right to discovery in a criminal case. *See United States v. Polowichak*, 783 F.2d 410, 414 (4th Cir. 1986). Rather, these cases impress upon the Government a duty to disclose any evidence in its possession or control which is favorable to the defendant on the matter of guilt or punishment, *Brady*, 373 U.S. at 87, or which could be used to impeach a Government witness, *Giglio*, 405 U.S. at 154. Thus, impeachment evidence may be material evidence subject to disclosure. *See Kyles v. Whitley*, 514 U.S. 419, 434 (1995) (holding that favorable impeachment evidence that is material must be disclosed by the government); *Bagley*, 473 U.S. at 683 (holding that failure to disclose evidence of witness bias or interest was constitutional error); *Giglio*, 405 U.S. at 154. Notwithstanding these concerns, the "court is simply not required to ensure access to all government material in order that [a defendant] might be able to find something exculpatory for his case." *Davis*, 752 F.2d at 976. Mere speculation or allegations that the prosecution possesses exculpatory information will not suffice to prove

7

"materiality." *See, e.g.*, *United States v. Ramos*, 27 F.3d 65, 71 (3d Cir. 1994) (mere speculation that agents' rough notes contained *Brady* evidence insufficient); *United States v. Williams-Davis*, 90 F.3d 490, 513 (D.C. Cir. 1996); *United States v. Michaels*, 796 F.2d 1112, 1116 (9th Cir. 1986). Defendant must show that there is a reasonable probability the evidence could affect the outcome of the trial. *See Baxter v. Thomas*, 45 F.3d 1501, 1507 (11th Cir. 1995).

Here, Defendant has not argued or demonstrated that the requested documents are material. Rather, Defendant poses questions that do not establish the requisite elements of *Brady* and which are merely based on his own conjecture. Therefore, the court finds that Defendant's request for this information to be speculative, and furthermore, that Defendant has not made a sufficient showing that the Government possesses evidence favorable to him that has not been disclosed, the evidence he seeks is related to the crimes charged, how any possible information from this evidence would aid in the preparation of a defense, or how the evidence could affect the outcome of the trial. Defendant's request to compel disclosure is therefore denied. *See United States v. Troya*, No. 06-80171-cr, 2007 WL 9702258, at *2 (S.D. Fla. Nov. 19, 2007) ("The Court finds that the Defendant's request as asserted is 'mere speculation' and lacks the indicia of materiality required under *Brady*.").

Accordingly, it is **ORDERED** that Defendant's Motion for Review of Cases Involving Investigating Agent (Dkt. 322) and Motion for *Brady/Giglio* Disclosure (Dkt. 375) are **DENIED**. Nonetheless, the Government shall continue to comply with

its obligations under *Brady* and its progeny, Federal Rule of Criminal Procedure 16, and the court's Pretrial Discovery Order (Dkt. 29).

**ORDERED** in Tampa, Florida, on June 13, 2022.

				JULIE S. SNEED
				UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of Record
Unrepresented Parties