**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

UNITED STATES OF AMERICA

v.                                                    CASE NO: 8:20-cr-207-CEH-UAM

PHILLIP ROY WASSERMAN

_____

**ORDER**

This matter comes before the Court upon Defendant Philip Roy Wasserman's Motion for New Trial for Violation of the Court's Order Severing the Tax Counts (Doc. 820) and the Government's Response (Doc. 842).

Following six weeks of trial, the jury returned a verdict finding Defendant Wasserman guilty as to Count One (Conspiracy to Commit Wire and Mail Fraud), Counts Two through Six (Wire Fraud), and Counts Seven, Eight, and Ten (Mail Fraud) of the Superseding Indictment. Doc. 806.

Defendant moves for a new trial pursuant to Federal Rule of Criminal Procedure 33. Doc. 820. He claims that the Government violated this Court's pre-trial order severing the tax-related counts from the Superseding Indictment. *Id.* at 1. The Court heard argument on this motion on October 2, 2023, and denied it by oral ruling. Doc. 954 at 2. The Court now issues its written order denying Plaintiff's Motion for New Trial.

## BACKGROUND

On June 23, 2020, a federal grand jury in the Middle District of Florida returned an indictment charging Phillip Roy Wasserman and Co-Defendant Kenneth Rossman with conspiracy to commit wire fraud and mail fraud, wire fraud, and mail fraud. Doc. 1 at 1–16. Several months later, a federal grand jury in the Middle District of Florida returned a superseding indictment that charged Wasserman with conspiracy to commit wire fraud and mail fraud (Count One); wire fraud (Counts Two through Six); mail fraud (Counts Seven through Ten); evasion of payment of income taxes (Count Eleven); and fraud and false statements (Counts Twelve through Eighteen). Doc. 69 at 1–25.

In July 2021, Defendant filed a motion for severance, arguing that the tax counts in the Superseding Indictment were improperly joined, and that even if the counts were properly joined, separate trials were warranted based on the risk of prejudice to him. Doc. 200 at 1, 4. The Court granted the motion and severed Counts Eleven through Eighteen from the Superseding Indictment. Doc. 376. The Court acknowledged that there was overlap between the allegations in each set of charges, but nevertheless opted to use its substantial discretion to sever the tax charges to avoid the chance of Wasserman suffering prejudice. *Id.* at 9–10. As to the evidentiary overlap, the Court noted that:

> [T]he Superseding Indictment alleges in Count One that the conspiracy included concealing from victim-investors and potential investors in the venture that the IRS had filed federal tax liens against Wasserman, while Count Eleven [alleging evasion of payment of income taxes, in violation of 26 U.S.C. § 7201 and 18 U.S.C. § 2] alleges that the IRS filed liens

against Wasserman and that he evaded the IRS's collection efforts. By way of another example, Counts Two through Five allege that, between 2017 and 2019, Wasserman caused funds to be sent via wire to a bank account belonging to Phillip Roy Financial Consultants, LLC, while Count Eleven alleges that, from 2013 through 2020, Wasserman willfully attempted to evade and defeat the payment of income taxes due and owing to the United States for the 2004, 2005, 2007 and 2009 calendar years by, among other actions, utilizing the same bank account to pay for personal expenses.

*Id.* at 9.

Despite the overlap, the Court severed the tax counts considering the complexity of the alleged scheme, the lengthy span of time across the charges, and because a jury might struggle to follow the Court's limiting instructions or appraise the independent evidence against Wasserman such as to render a fair and impartial verdict. *Id.* at 11.

On April 3, 2023, trial began on the fraud counts. [1] Doc. 724. On April 26, James Farrell, an Internal Revenue Service ("IRS") Revenue Officer, took the stand as a Government witness. *See* Doc. 820-1. During Farrell's testimony, Wasserman asked the court to allow a proffer of his cross-examination outside the jury's presence out of concern about his ability to cross-examine Farrell without bringing in evidence related to the severed counts. *Id.* at 56–59. The Court agreed to allow a proffer. *Id.* Before the proffer, Defendant moved for a mistrial, alleging that the Government's examination of Farrell violated the severance order. *Id.* at 75. The Government

---

[1] Trial in this case proceeded for more than thirty days. In light of the extensive pre-trial motion practice in this matter, as well as the amount of evidence and testimony presented at trial, the Court notes here only the background information relevant to the instant Motion.

contended that the testimony had been incredibly narrow and limited to the tax liens that Wasserman was obligated to reveal to potential investors, so that they could make informed decisions. *Id.* The Government described this as the "fundamental basis of the conspiracy, wire fraud and mail fraud counts." *Id.* Wasserman argued that the Government painted him as a liar to the IRS, and that he could not cross-examine Farrell without opening the door to evidence related to the severed counts. *Id.* at 75–76. The Court denied the motion, stating in part:

> I think you have an ample opportunity to cross-examine him [Farrell]. You are making the argument simply because you disagree with my allowing him to testify, but there is fodder, lots of information upon which you can cross-examine him. In addition, according to what you've told me, you have your own witnesses who will come apparently and testify differently with regard to your being a tax cheat, as you've labeled yourself based upon what this witness said. This witness has never labeled you a tax cheat. Those are words that you're using, Mr. Wasserman, in order to . . . exaggerate the testimony that's come out here. Your motion for mistrial is denied.

*Id.* at 76–77.

Wasserman then proffered a portion of his cross-examination. *Id.* at 77–88. Afterwards, he stated that the proffer had been helpful and commented that "it's obvious that Mr. Farrell didn't get information to make a determination on what monies were available to him." *Id.* at 88. The Court responded: "If you're talking about helpful for purposes of the tax lien[,]" and Wasserman answered: "Yes." *Id.* The Court noted that there appeared to be no need for testimony before the jury about any tax returns relevant to the severed counts, and that Farrell's proffered testimony related

only to the tax lien judgment Farrell was attempting to collect on, which was already in evidence and occurred during the period relevant to the fraud counts. *Id.* at 89.

Closing arguments were held on May 11, 2023. Doc. 790. The jurors began to deliberate on May 12. Doc. 798. On May 15, the jury found Wasserman guilty on all counts. Doc. 806. Defendant filed the instant motion (Doc. 820) on May 28, and the Government responded. Doc. 842.

## LEGAL STANDARD

Federal Rule of Criminal Procedure 33(a) provides that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." The Eleventh Circuit describes this as a "broad standard." *United States v. Vicaria*, 12 F.3d 195, 198 (11th Cir. 1994). Thus, the Court considers whether the verdict must be set aside in the interest of justice based on Defendant's arguments. *United States v. Green*, 275 F. App'x 898, 899 (11th Cir. 2008). "The decision to grant or deny the new trial motion is within [the] sound discretion of the trial court and will not be overturned on appeal unless the ruling is so clearly erroneous as to constitute an abuse of discretion." *Vicaria,* 12 F.3d at 198 (quoting *United States v. Wilson*, 894 F.2d 1245, 1252 (11th Cir. 1990)).

## DISCUSSION

Defendant argues that the interest of justice requires a new trial because the Government presented improper evidence to the jury of him evading payment of taxes and making misstatements and omissions to the IRS. Doc. 820 at 4. He argues that: (1) the testimony of James Farrell, a former IRS tax collection officer; and (2) the

Government's statements during closing arguments violated the severance order, caused him prejudice, and necessitate a new trial under Fed. R. Crim. P. 33(a). *Id.* at 5–21.

The Government responds in opposition that: (1) tax-related testimony and evidence was limited in scope to the federal tax liens pending against Wasserman at the time he and Rossman solicited clients to invest in FastLife (as relevant for the fraud counts); (2) the Court correctly denied Wasserman's motion for a mistrial on this issue; and (3) the Government's references at closing argument likewise did not violate the severance order. Doc. 842 at 5–14. Even if they had violated the order, the Government argues that Wasserman has not shown any prejudice to his substantial rights. *Id.* at 14. In conclusion, the Government argues that there is nothing to suggest that the evidence weighs heavily against the verdict, that Wasserman's substantial rights were jeopardized, or that a miscarriage of justice occurred. *Id.* at 15. After careful review and consideration, the Court agrees that a new trial is not required in the interest of justice.

As to Farrell's testimony, Defendant concedes that the "existence of the tax liens was relevant to the government's case as to the wire and mail fraud counts in that [his] failing to inform the investors of the existence of these tax liens was arguably a material omission." Doc. 820 at 5. However, he argues that the Government violated the severance order when it delved into Farrell's attempts to collect on the tax liens. *Id.* at 5–7. He claims that the Government elicited evidence that had no bearing on whether he "intend[ed] to cause the investors of FastLife a loss," and that this evidence

was improperly used to show that he lied to the IRS. *Id.* at 7–11. Wasserman cites several excerpts of the Government's examination of Farrell, focusing on the income information Wasserman provided Farrell, whether Wasserman paid personal expenses out of his business account, and whether he received any compensation from FastLife. *Id.* at 6, 8–10, 12, 15–16.

Farrell testified that he sought information about Wasserman's financial statements, income, assets, expenses, and obligations to determine what funds could be used to pay his pre-existing tax liens. *Id.* at 15–16. This, Wasserman argues, is proof that Farrell's testimony was geared towards the tax counts, rather than the fraud counts. *Id.* at 16. Wasserman contends that he was "forced" to pursue a particular line of questioning on cross-examination to explain "the tax loss carry forward and how that would affect the IRS's ability to collect on the tax liens." *Id.* at 17–18, 21. Based on the Government's examination of Farrell and the tax liens, he argues that the jury was given the impression that he actively evaded his tax obligations at the same time he defrauded the investors. *Id.* at 18. Wasserman argues this constitutes a violation of the severance order and caused him prejudice. *Id.*

The Government responds that it was careful to limit tax-related testimony and evidence to the federal tax liens pending at the time Wasserman and Rossman solicited investments. Doc. 842 at 5. The Government notes that Florida Office of Financial Regulation Investigator Stephen Howland testified about his comprehensive search of public records, which uncovered numerous federal tax liens pending against Wasserman. *Id.* These tax liens were introduced as certified public records. *Id.* at 6.

Howland further testified that his investigation suggested investors had not been advised of the tax liens, that such information would have been relevant to their ability to make an informed investment, and that the tax liens were a factor in his decision to refer the matter to the IRS for federal investigation. *Id.* The Government further points out that a former independent contractor for Wasserman, and Rossman, testified as to their understanding of Wasserman's compensation, payment of personal expenses out of business accounts, and back-dated compensation agreement. *Id.* at 6–8.

As the Government outlines, Farrell corroborated the existence of the federal tax liens, published their contents, and described the purpose of his collection efforts from August 2016 to June 2020, a time period relevant to the fraud charges. *Id.* at 8; Doc. 820-1 at 13–25. The Government notes that the Court repeatedly explained to Wasserman, in denying his objections, that the Government's examination of Farrell was narrowly focused on the federal tax liens and permitted by the severance order. Doc. 842 at 8. Numerous related objections to Government exhibits were also denied. *Id.* at 8–9. These exhibits reflected admissions Wasserman made during the period charged in Count One and memorialized in a handwritten note to Farrell, IRS computerized records created and maintained in the regular course of tax collection activities, and an IRS Form 433 financial statement. *See* Docs. 809-506, 809-507, 809-508, 809-509, 809-510. The Government argues that these exhibits show Wasserman concealing his personal use of business funds, and that Farrell testified that Wasserman failed to provide him with an expense spreadsheet or compensation agreement, which supports the Government's contention that Wasserman fabricated his back-dated

compensation agreement to thwart the Office of Financial Regulation investigation. Doc. 842 at 9–10.

On cross-examination, Farrell clarified the distinction between income and expenses on a tax return and discussed the process for determining whether a taxpayer can make payments on tax liens. Doc. 820-1 at 100–101. The Government argues that this exchange shows that Wasserman was not forced to bring up any tax losses or previously-filed tax returns, and that there was no need to inquire about previous tax returns in order to explain the pending tax liens and Farrell's attempts to collect on the same. Doc. 842 at 13.

As to Wasserman's request for a new trial based on Farrell's testimony, the Court will deny the motion. As stated on the record at oral argument, the undersigned entered the severance order at issue in this motion and sat as an umpire during the trial to ensure that it was not violated. As supported by the transcripts of testimony from trial and the excerpts cited by both sides, the Court again finds that the severance order was not violated. Instead, the Government limited its direct examination of Farrell to the time period relevant to the fraud counts. And Wasserman fails to cite persuasive law or facts supporting his argument that any portion of Farrell's testimony constituted a violation of the severance order and, moreover, would require a new trial in the interest of justice.

Defendant also argues that a new trial is warranted based on the Government's closing arguments, because the Government "essentially called [him] a tax cheat, which is explicitly what the severance order issued by this Court was designed and

indented [sic] to prohibit the government from arguing." Doc. 820 at 19. He underscores the Government's statement in closing that he "did not want to pay the tax liens." *Id.* Wasserman argues that this implied he was evading payment of income tax in addition to defrauding investors. *Id.* at 20. Wasserman claims that because the Court severed "the evidence" related to his evasion of income taxes from the fraud case, this improper evidence and testimony may have affected the jury's verdict, and his right to a fair trial was violated. *Id.* at 20–21.

The Government responds that its references to Farrell's testimony in closing argument instead showed that Wasserman had a second motivation to conceal his improper personal use of investor funds. Doc. 842 at 13. Because this evidence dovetails with and corroborates the evidence that Wasserman made material omissions in his pitches to FastLife investors, the Government argues that its inclusion in the closing argument and trial did not violate the severance order. *Id.* Moreover, even if the challenged references during closing argument did violate the Court's Order, the Government argues that there was no prejudice to Wasserman's substantial rights. *Id.* at 14.

To the extent Wasserman moves for a new trial based on the Government's closing arguments, his motion is denied. Wasserman objects to portions of the closing argument related to Farrell's testimony. In contrast to Wasserman's arguments, however, the Government did not call him "a tax cheat" or otherwise accuse him of any of the charges that this Court severed. Nor does Wasserman provide any other convincing argument that the severance order was violated or that a new trial is

warranted. Additionally, the Court agrees that even if the challenged statements did violate the severance order, Wasserman has not made a showing that they constituted a miscarriage of justice, caused him prejudice, or otherwise warrant a new trial in the interest of justice. *See United States v. Feldman,* 936 F.3d 1288, 1302–1304 (11th Cir. 2019) (holding that "a defendant's substantial rights are prejudiced if there is a reasonable probability that, but for the remarks, the outcome of the trial would have been different."). Although Wasserman claims that his right to receive a fair trial was violated (Doc. 820 at 8, 20, 21) he does not provide sufficient explanation besides his own claim that the Government violated the severance order. Thus, having found that the interest of justice does not require a new trial based on either argument, the Court will deny the motion.

Accordingly, it is hereby **ORDERED:**

1.    Defendant's Motion for New Trial For Violation of this Court's Order Severing the Tax Counts (Doc. 820) is **DENIED.**

**DONE** and **ORDERED** in Tampa, Florida on January 8, 2024.

Charlene Edwards Honeywell
United States District Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties