# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

UNITED STATES OF AMERICA

v.  CASE NO: 8:20-cr-207-CEH-NHA

PHILLIP ROY WASSERMAN
_____

## ORDER

This cause comes before the Court upon Defendant Phillip Roy Wasserman's "(1) Emergency Motion for New Trial, (2) To Set Aside Verdict, (3) Request for an Evidentiary Hearing Based Upon Newly Discovered Additional Information of Intentional Government Misconduct and Violation of *Brady*" (Doc. 1044) and his Motion to Withdraw Guilty Plea as to Count (11) Eleven Prior to Sentencing (Doc. 1045). The Government submitted a consolidated response. Doc. 1050. After careful consideration, the Court will deny both motions.

## BACKGROUND

On June 23, 2020, a federal grand jury in the Middle District of Florida returned an indictment charging Phillip Roy Wasserman and Co-Defendant Kenneth Rossman with conspiracy to commit wire fraud and mail fraud, wire fraud, and mail fraud. Doc. 1 at 1–16. Several months later, a federal grand jury in the Middle District of Florida returned a Superseding Indictment that charged Wasserman with conspiracy to commit wire fraud and mail fraud (Count One); wire fraud (Counts Two through Six); mail fraud (Counts Seven through Ten); evasion of payment of income taxes (Count

Eleven); and fraud and false statements (Counts Twelve through Eighteen). Doc. 69 at 1–25. The fraud counts were later severed from the tax-related counts. Doc. 376.

Following six weeks of trial on the fraud counts (Counts One, Two through Six, and Seven, Eight, and Ten), a jury found Wasserman guilty of all counts. Doc. 806. As to the tax counts, Wasserman pleaded guilty to Count Eleven before a Magistrate Judge on October 23, 2023, (Docs. 1008, 1053) and this Court accepted the plea and adjudged Wasserman guilty on November 13, 2023. Doc. 1019. Sentencing on the fraud counts and Count Eleven is scheduled for January 12, 2024. Doc. 1031. Wasserman now moves for a new trial based on evidence and information about his payments toward IRS tax liens—which he claims to have "discovered" several days before his sentencing. He also moves to withdraw his guilty plea as to Count Eleven based on the same evidence. The Government responds in opposition.

**LEGAL STANDARD**

**Motion for New Trial**

*Brady v. Maryland* requires the prosecution to disclose to the defense evidence that is both favorable to the accused and "material either to guilt or to punishment." 373 U.S. 83, 87 (1963). The Eleventh Circuit has held that in order to establish constitutional error in violation of *Brady*, a defendant must show: (1) that the government possessed evidence favorable to the defendant (including impeachment evidence); (2) that the defendant did not possess the evidence nor could he have obtained it himself with any reasonable diligence; (3) that the prosecution suppressed the favorable evidence; and (4) that had the evidence been revealed to the defense,

there is a reasonable probability that the outcome of the proceedings would have been different. *United States v. Meros*, 866 F.2d 1304, 1308 (11th Cir. 1989); *see also United States v. Vargas,* 792 Fed. Appx. 764, 774 (11th Cir. 2019).

A *Giglio* error is a species of *Brady* error that "occurs when 'the undisclosed evidence demonstrates that the prosecution's case included perjured testimony and that the prosecution knew, or should have known, of the perjury.'" *Davis v. Terry,* 465 F.3d 1249, 1253 (11th Cir. 2006) (quoting *Ventura v. Att'y Gen., Fla.,* 419 F.3d 1269, 1276–1277 (11th Cir. 2005)). To establish a *Giglio* violation, a defendant must demonstrate that the prosecutor knowingly used perjured testimony or failed to correct what he subsequently learned was false testimony, and that the falsehood was material. *Id.* at 1253 (quotation marks omitted). The falsehood is material if there is any reasonable likelihood that the false testimony could have affected the judgment. *Ford v. Hall,* 546 F.3d 1326, 1331–1332 (11th Cir. 2008) "The could have standard requires a new trial unless the prosecution persuades the court that the false testimony was harmless beyond a reasonable doubt." *Guzman v. Sec'y, Dep't of Corr.,* 663 F.3d 1336, 1348 (11th Cir. 2011) (quotation omitted).

### Motion to Withdraw a Guilty Plea

Prior to sentencing, a defendant can move to withdraw his guilty plea if he "can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). The provisions of this rule are "liberally construed" where applied to pre-sentence motions. *United States v. Ross,* 147 F. App'x 936, 938 (11th Cir. 2005).

3

However, "[t]here is no absolute right to withdraw a guilty plea." *United States v. Medlock,* 12 F.3d 185, 187 (11th Cir. 1994). The decision to allow withdrawal of a guilty plea is within the sound discretion of the trial court. *United States v. Cesal,* 391 F. 3d. 1172, 1179 (11th Cir. 2004).

To determine whether a defendant has given a fair and just reason for withdrawal, a district court examines the totality of the circumstances, including: "(1) whether close assistance of counsel was available; (2) whether the plea was knowing and voluntary; (3) whether judicial resources would be conserved; and (4) whether the government would be prejudiced if the defendant were allowed to withdraw his plea." *United States v. Buckles,* 843 F.2d 469, 472 (11th Cir. 1988) (internal marks and citations omitted). Courts have also considered the defendant's admission of factual guilt at the Rule 11 hearing and the timing of the motion to withdraw. *United States v. Rogers,* 848 F.2d 166, 158 (11th Cir. 1988). "The good faith, credibility and weight of a defendant's assertions in support of a motion [to withdraw a guilty plea] are issues for the trial court to decide." *Buckles,* 843 F.2d at 472.

## DISCUSSION

Wasserman's motions are both conclusory, devoid of factual or legal support, and due to be denied. The motion for a new trial fails because Wasserman identifies no Government misconduct, *Brady* violation, or *Giglio* violation in this case. The motion to withdraw his plea months after the change of plea hearing and on the eve of sentencing is similarly meritless, fails to identify a plausible "fair and just" reason for withdrawal, and is due to be denied under the totality of the circumstances.

4

### A. "Emergency" Motion for New Trial (Doc. 1044)

Wasserman's first motion asks the Court for a new trial, to set aside the verdict, and for an evidentiary hearing based on "newly discovered" government misconduct and a *Brady* violation. Doc. 1044 at 1. He claims that the indictment, plea agreement, information supplied to the presentence officer, and tax liens presented to the jury at the fraud trial omitted that he had made over $500,000 in payments on the tax liens. *Id.* at 1–2. Wasserman claims that the IRS Agent who testified at trial must have known the correct amount of taxes due and failed to disclose this to the jury or the Court. *Id.* at 2–3. Wasserman argues that his former tax attorney calculated the actual amounts due to be approximately $902,000, and that the Government only last week stated (in an email to the presentence officer) that the correct amount owed to the IRS was $950,000. *Id.* Wasserman argues that he failed to "catch" this error because the tax counts were severed from the fraud counts. *Id.* at 3. He claims his experts will testify that this error was "shocking" and a "material misrepresentation." *Id.* at 4.

In his memorandum of law, Wasserman cites a number of cases that he claims apply. *Id.* at 4–8. He asserts that *Giglio* and *Brady* apply because "false evidence" was allowed to go before the jury. *Id.* at 4–5. He largely fails to make specific and relevant arguments, however, and provides a blanket cite to the caselaw in his other *Brady* motion. *Id.* Finally, he concludes that the Government has violated his right to a fair trial, and that the Court should set aside the verdict, order a new trial, and sanction the Government. *Id.* at 5–8. He also asks for an evidentiary hearing and claims that "if

the trial jury knew that Mr. Rossman was mentally ill" (the subject of his other *Brady* motion (Doc. 892)) and that the Government misrepresented the amount of taxes owed on the tax liens, the verdict would have been different. *Id.* at 8.

The Government responds that neither the Superseding Indictment, nor the plea agreement or the Government's evidence at trial established or argued that Defendant owed $1,477,286.78 to the IRS—the amount that Wasserman complains is wrong. *Id.* at 4. It notes that in response to a revised draft Presentence Investigation Report ("PSR"), a detailed explanation of the correct calculation of total loss incurred by the IRS was provided, totaling $952,327.29. *Id.* The Government argues that the total loss incurred by the IRS was accurately depicted in the Superseding Indictment, at trial as related to the fraud counts, in the plea agreement as related to Count Eleven, and in the final PSR after the positions of the Parties were shared with the Probation Officer who wrote the PSR.

Furthermore, the Government argues that this evidence was undoubtedly in Wasserman's possession, or as he himself has acknowledged, in the possession of his tax lawyers. *Id.* Even if this were not the case, the Government argues he could have obtained the information and evidence with "any reasonable diligence" because it relates to *his* taxes and the payments *he* made to the IRS. *Id.* Therefore, the Government argues Wasserman's motion for new trial clearly fails.

The Court agrees. First, the Government did not misstate Wasserman's tax loss, as he alleges. The Superseding Indictment instead summarizes certain acts and events related to Wasserman's tax deficiencies in 2004, 2005, 2007, and 2009. *See* Doc. 69 at

6

17–23. It includes the dates and amounts of the original tax assessments and the initial notices of tax liens, which reflected $1,477,286.78. *Id.* at 17–18.[1] The Government's response clearly spells out how it calculated the amount of taxes owed for the purposes of the Superseding Indictment and a related press release. Doc. 1050 at 5–6.

At trial, the Government introduced into evidence the initial notices of tax liens for 2004, 2005, 2007, and 2009, as well as the refiled notices of tax liens reflecting lower amounts of taxes due and owed by Wasserman. Doc. 1050 at 7 (citing to specific exhibits). The IRS Special Agent on the case used the lower amounts reflected in the refiled notices to create a "Pre-Fast Life Debt Timeline." *See* Doc. 1050-7. Therefore, the Government is correct that the jury was provided with tax amounts due and owing that took into account all payments made and net operating losses applied.

Additionally, the Government explains that former State of Florida, Office of Financial Regulation ("OFR") Investigator Stephen Howland and an IRS Revenue Officer testified consistent with this evidence at trial. *See* Doc. 1050 at 8. And the Government's post-trial press release referred to the tax loss amount in a manner consistent with the testimony and evidence, stating that Wasserman had taken numerous affirmative steps to evade payment of over $900,000 in taxes. *See* Doc. 1050-1 at 3. Moreover, the plea agreement does not state that Wasserman owed $1,477,286.78, and instead includes the same facts, same tables, as detailed in Count Eleven of the Superseding Indictment. *See* Doc. 992 at 10–11. The plea agreement does

---

[1] As per the sealed exhibits the Government attaches to its response, these figures are accurate.

7

not identify the total amount of taxes owed by Wasserman. Also, as the Government argues, the elements of the offense do not require proof of the specific total amount of taxes due and owing. *See* Doc. 992 at 2, Part A, ¶ 3; *see also Sansone v. United States,* 380 U.S. 343, 351 (1965) (citing *Lawn v. United States,* 355 U.S. 339, 361 (1958)); *Spies v. United States,* 317 U.S. 492, 496–499 (1943).

The Government's description of the draft and final PSR is also accurate. The first draft PSR was docketed on August 2, 2023, (Doc. 887) and was amended after Wasserman pleaded guilty to Count Eleven. *See* Doc. 1024. The draft amended PSR (Doc. 1024 ¶ 60) indicated an IRS loss amount totaling $1,477,286.78 and was provided to the Parties for review, comment, and correction. The positions of the Parties were then shared with the Probation Officer who wrote the PSR. Wasserman objected to the total loss amount, and the Government responded by supplying the calculation in correspondence to the Probation Office with the Defendant copied. *See* Doc. 1044-1. This process was not presented to or shared with the grand jury or the trial jury, but was instead done for the purposes of sentencing. The final PSR was docketed on January 5, 2024, (Doc. 1041) and reported that the IRS incurred a loss of $952,372.29. *Id.* at 20.

Considering this factual background, Wasserman's motion clearly fails. As described in the Government's response, the record establishes that accurate information and evidence regarding the initial notices of tax liens and the refiled notices of tax liens was provided at every stage of this case. And even if the Government had somehow withheld the evidence of his tax payments, Wasserman

8

clearly could have obtained it "with any reasonable diligence" as it relates to the taxes and payments he made toward *his* IRS obligation. In fact, Wasserman even acknowledges that his tax attorneys were in possession of this information. *See* Doc. 1044 at 3. Based on this fact alone, the *Brady* motion fails. However, even if Wasserman had established that the evidence was suppressed and not discoverable by reasonable diligence, his materiality argument is threadbare and conclusory. Therefore, the Court will deny Wasserman's request for relief pursuant to *Brady*. Wasserman's *Giglio* argument is even less developed, in that he fails to establish that any perjured testimony whatsoever was presented, so it will also be denied.

Finally, although it is difficult to tell from his briefing, Wasserman's reference to "newly discovered" evidence (Doc. 1044 at 1) suggests that he may also seek a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure. To merit a new trial based on newly discovered evidence, Wasserman must show that: (1) the evidence was discovered following trial; (2) he exercised due care to discover the evidence; (3) the evidence is not merely cumulative or impeaching; (4) the evidence is material; and (5) the evidence is of such a nature that a new trial would probably produce a different result. *See United States v. Lee,* 68 F.3d 1267, 1273 (11th Cir. 1995). Wasserman fails to establish these elements, and any such motion would clearly fail on the grounds that he already possessed the evidence (or could have through due care) and because he has not shown materiality or the probability of a different result at trial. To the extent Wasserman intends to move for a new trial under Federal Rule of Criminal Procedure 33(a) in the "interest of justice," the Court will deny the request because he has failed

to make any argument establishing such a claim and the evidence does not reflect that a new trial is warranted in the "interest of justice".

### B. Motion to Withdraw Guilty Plea (Doc. 1045)

Next, Wasserman moves to withdraw his guilty plea as to Count Eleven because the Government "purposely withheld the fact that he paid more than $500,000.00 on the tax liens." Doc. 1045 at 1–2. The Government responds that Wasserman fails to justify the withdrawal of his plea because: (1) his arguments about the loss amount have no merit; (2) he had close and active assistance of standby counsel; (3) permitting Wasserman to withdraw his guilty plea days before sentencing would likely result in the expenditure of substantial judicial resources to conclude this case; (4) the Government would be prejudiced if Wasserman's plea was withdrawn; and (5) ultimately, Wasserman fails to show "a fair and just reason for requesting withdrawal." Doc. 1050 at 12.

Having considered the arguments of Wasserman and the Government and having reviewed the transcript of the change of plea hearing (Doc. 1053), the Court agrees that Wasserman fails to show a fair and just reason for requesting withdrawal of his guilty plea and that his motion must be denied based on the totality of the circumstances.

First, Wasserman had the assistance from standby counsel William Sansone in connection with his guilty plea. According to the Government, Mr. Sansone actively participated in plea negotiations to assist the Defendant. Doc. 1050 at 11. Moreover, Sansone signed the plea agreement. *See* Doc. 992 at 12, Part B, ¶12. He also attended

the change of plea hearing and was readily available to assist Wasserman throughout the proceeding. *See* Docs. 1008, 1053.

Based upon Wasserman's unambiguous statements and answers to questions under oath during the change of plea hearing (Doc. 1053), the Magistrate Judge determined that his guilty plea was knowing and voluntary and "that the offense charged is supported by an independent basis in fact containing each of the essential elements of such offense." *See* Doc. 1007. Therefore, the Magistrate Judge recommended that the plea be accepted and that Wasserman be adjudged guilty and sentenced. *Id.* This Court accepted the plea and adjudged Wasserman guilty of Count Eleven, noting that no objection was made within the 14-day objection period. Doc. 1019.

This Court's review of the change of plea hearing supports a finding that Wasserman knowingly and voluntarily entered his guilty plea, and that his arguments for withdrawal are not supported by any "fair and just" reason. First, Wasserman acknowledged that he had an opportunity to discuss the plea with his standby counsel. Doc. 1053 at 19. Moreover, Wasserman stated that he did not need any more time to discuss with standby counsel or think over the guilty plea. *Id.* And the Magistrate Judge informed Wasserman at the outset that he would be allowed "any opportunity" to speak to his standby counsel during the proceeding if he so wished. *Id.* Later, Wasserman stated that he was pleading guilty freely and voluntarily, and that nobody forced or coerced him to do so. *Id.* at 29. Such "[s]tatements made under oath by a defendant during a plea colloquy receive a strong presumption of truthfulness. *United*

11

*States v. Bandzul*, 652 F. App'x 860, 861 (11th Cir. 2016) (citing *United States v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994)).

Also, Wasserman confirmed at the change of plea hearing that he understood his rights, the rights he would be giving up by pleading guilty, the charges against him, the potential penalties, the potential consequences, the sentencing guidelines, and his Plea Agreement. Doc. 1053 at 17–21. The Magistrate Judge also specifically advised Defendant as to the maximum penalties, and Defendant stated that he understood. *Id.* at 20. Wasserman provides no reason for the Court to doubt the veracity of these admissions under oath.

Moreover, the timing of the motion to withdraw weighs in favor of denial. "[T]he time between entry of the plea and motion to withdraw the plea may be indicative of defendant's motivation." *United States v. Gonzalez–Mercado*, 808 F.2d 796, 801 (11th Cir. 1987) (citations omitted). An extended period of time between a defendant's guilty plea and his motion to withdraw his guilty plea may call into question the veracity of a defendant's stated motive in filing the motion. *See id.* In some instances, a "swift change of heart is itself strong indication that the plea was entered in haste and confusion," *United States v. Barker*, 514 F.2d 208, 222 (D.C. Cir. 1975) (en banc), *cert. denied*, 421 U.S. 1013 (1975). A prolonged delay, on the other hand, could suggest that defendant withdrew his plea in anticipation of a harsher sanction than that recommended in his plea agreement, or in an effort to push back sentencing. *See Gonzalez–Mercado*, 808 F.2d at 801. Here, Defendant waited almost three months after entering his guilty plea before seeking to withdraw it. His stated reasons for

withdrawal—that he came across "newly discovered evidence" of *his own tax payments*—is inconsistent with his admissions at the plea hearing and unsupported by law, fact, or logic. Thus, the lengthy delay in filing the motion also supports denial.

Further, the Court agrees that permitting withdrawal of the guilty plea at this juncture, days before the sentencing hearing and without any compelling justification, would likely result in the expenditure of substantial judicial resources in order to bring this case to conclusion. In addition, the Government would be prejudiced. Trial on the tax counts was scheduled to begin with jury selection on Friday, October 27, 2023, and the prosecution indicates it was fully prepared for trial when Defendant pleaded guilty just four days before the start of trial.

Based upon the totality of the circumstances, the Court finds that Wasserman fails to show "a fair and just reason for requesting withdrawal." *See* Fed. R. Crim. P. 11(d)(2)(B); *see also Buckles,* 843 F.2d at 472. Additionally, "[t]he longer the delay between the entry of the plea and the motion to withdraw it, the more substantial the reasons must be as to why the defendant seeks withdrawal." *Id.* at 473. *United States v. Brehm,* 442 F.3d 1291, 1298 (11th Cir. 2006). Here, however, Defendant's stated reasons for withdrawal are not supported by the law or the record.

## CONCLUSION

For the foregoing reasons, Wasserman's motions are unpersuasive and due to be denied. He fails to demonstrate any justification for a new trial, an evidentiary hearing, or withdrawal of his guilty plea. Sentencing as to the fraud counts and Count

13

Eleven will proceed on Friday, January 12, 2024, as scheduled. The motion hearing scheduled for Thursday, January 11, 2024 will be cancelled by separate notice.

Accordingly, it is hereby **ORDERED:**

1. Defendant's "(1) Emergency Motion for New Trial; (2) To Set Aside Verdict; (3) Request for an Evidentiary Hearing Based upon Newly Discovered Additional Information of Intentional Government Misconduct and Violation of *Brady*" (Doc. 1044) is **DENIED**.

2. Defendant's Motion to Withdraw Guilty Plea as to Count (11) Eleven Prior to Sentencing) (Doc. 1045) is **DENIED.**

**DONE** and **ORDERED** in Tampa, Florida on January 10, 2024.

*Charlene Edwards Honeywell*
Charlene Edwards Honeywell
United States District Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties