UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

Phillip Roy Wasserman
Defendant,

v.                                          Case No. 8:20-cr-207-T-CEH-SPF

United States of America
Plaintiff,

--------------------------/

## RULE 33 MOTION FOR A NEW TRIAL
### BASED ON NEWLY DISCOVERED EVIDENCE

**Defendant** appears before this court and submits a Rule 33 motion in his favor based on newly discovered evidence. Defendant currently has an appeal pending but this newly discovered evidence was obtained after the trial and initial appellate brief (No.24-10389) was filed. None of the newly discovered evidence is referenced in the pending appeal or was known to the court at trial.

## JURISDICTION

This court has jurisdiction to hear the Rule33 motion, grant an evidentiary hearing, and grant bond pending to its decision. A Rule 33 for a new trial is neither a continuation or extension of a direct appeal. **"Barnes v. United States**, 437 F.3d 1074, 1079 (11th Cir. 2006). The court determined thet the inmate's motion for a new trial, even though it was filed while his direct appeal was pending, did not constitute a continuation

1

or extension of the direct appeal, but was a collateral motion on his conviction that the district court had jurisdiction to entertain, notwithstanding the fact that the direct appeal was pending. To satisfy the requirements for a Rule 33(b)(1) motion. (See **United States v. Jernigan,** 341 F.3d 1273, 1287 (11th Cir. 2003) (Setting out the requirements for such a motion, including that the evidence is "discovered after the trial" and "such that a new trial would probably produce a different result.))

To the extent Defendant seeks a new trial based on newly discovered evidence, the District court is not diverted of jurisdiction to consider that contention. **United States v. Spellissy,** 2009 U.S. Dist. LEXIS 69450 (Judge Whittemore in the Middle District of Florida) quoting **United States v. Hogan,** 181 Fed. Appx. 803, 804 (11th Cir. 2006).

In **Price v. Romero,** 2016 U.S. Dist. LEXIS 156671 (U.S.D.C Southern District of Florida) the court found:

> The pendency of these motions, however, did not constitute a continuation or an extension of the petitioner's direct appeal; rather they constituted collateral motions on his conviction that the district court had jurisdiction to entertain, notwithstanding the fact that petitioner's direct appeal was pending. (See **United States v. Khoury,** 901 F.2d 975, 976 n. 3 (11th Cir. 1990) (citing **United States v. Cronic,** 466 U.S. 648, 667 n. 42, 104 S. Ct 2039, 2051. N. 42, 80 L Ed. 2d 657 (1984)) see also Fed. R Crim. P 33(b)(1).

2

Under Rule 33, upon a defendant's motion "the court may vacate any judgement and grant a new trial if the interest of justice so requires. Fed R. CR. P. 33(a).

## GROUNDS AND ISSUES

1). The IRS had no Law Enforcement power or authority to investigate and prosecute the conspiracy and fraud charges which were non-tax criminal violations.

2). The IRSagent lacked enforcement powers and authority for non-tax violations while having no jurisdiction or enforcement powers as to non-tax criminal violations. The agent and government wrongly disclosed Wasserman's return informantion to the Grand Jury without obtaining a court order in violation of 26 U.S.C.§ 6103 and tainted the grand jury.

3). IRSCID agent Batsch was wrongly allowed to testify.

4). The Email warrants were obtained in violation of the 4th amendment.

5). Brady Violation

6). Napue violation

7). Government misconduct

8). 5th and 6th amendment violations of Defendant's rights.

9). Actual innocence

10). Witness tampering and obstruction of justice by IRS agent Batsch.

## GROUNDS 1-4

IRS agent Shawn Batsch has been and is currently on administrative leave from the IRS. The Defendant has reason to believe the reason for Batsch being placed on administrative leave is because of his actions in Defendant's criminal case.

3

In the Defendant's case of conspiracy, mail fraud, and wire fraud; IRSCID agent Shawn Batsch had no jurisdiction or statutory enforcement authority to investigate investor fraud and conspiracy on any count unrelated to taxes and on tax administration. Yet he headed the investigation, served as case agent, brought the investor fraud and conspiracy charges to a grand jury, and testified as a lead agent in a case he had no statutory authority or jurisdiction to investigate.

State OFR agent Howland had testified that he brought the case to Batsch because of the defendant's tax liens. There is no provision in the Internal Revenue Code or any statute allowing Batsch's authority to investigate non-tax crimes unrelated to tax administration. There were two indictments here, five months apart. The first indictment, regarding investor fraud, had nothing to do with taxes. The entire investigation shows it had nothing to do with taxes. The 150+ interviews that Batsch conducted show they had nothing to do with taxes or tax administration.

**HISTORY**

The Florida office of Financial Regulation (OFR) began an investigation of the defendant and his company, Fastlife in 2018. Agent Howland, per his deposition in Civil Case No. 8:21-cv-2334-TPB-SPF, "did not know if he had a good case." While working with FBI agents Stone and Volp and IRS CID agent Shawn Batsch on another case, he presented the case to them in December 2018. The FBI agents looked into the case and passed on it (per Howland testimony in the same deposition). IRS agent Batsch took up the case and began a reign of terror against the defendant.

Interestingly enough, the defendant motioned pre-trial to get Howland and Batsch's communications in this case and was denied.

4

The reason was made clear from Howland's testimony in that deposition where he was asked if the Defendant was aware of these facts regarding the FBI's refusal to get involved and answered, "No, I didn't think he needed to know." The government clearly sought to suppress the fact that the FBI refused the case because it was exculpatory evidence and the fact that the IRS agent had no enforcement powers for investor fraud unrelated to to tax administration purposes. The government then vehemently opposed Defendant's right to see the exculpatory communications in pretrial motion.

This new Brady information, again, is important for the court to reflect on the government 's failure to disclose exculpatory evidence.

IRS CID agent Batsch, who served as the case agent against the Defendant, had NO statutory jurisdiction to investigate investor fraud unrelated to tax administration matters. But this is just what Batsch did. The original indictment was June 2020. All counts were regarding conspiracy, mail fraud, and wire fraud – nothing to do with taxes. In November 2020, there was a superseding indictment alleging counts of wrongful tax action plus three additional counts of mail/wire fraud regarding interest payments the Defendant made to investors.

The Defendant submits the superseding indictment was made to cover the illegal actions of agent Batsch and the government in Batsch having no enforcement power for the original June 2020 indictment. This is further substantiated by Batsch's ridiculous declaration in the Civil case where he states that he was investigating to see if the investor monies were gifts to the Defendant and the Defendant wasn't reporting them as taxable income.

5

This is gibberish for two reasons: First, gifts are not taxable income per 26 U.S.C.§2503, and second, in over 150+ interviews, Batsch never asked a question about taxes or if the investor monies were gifts to the Defendant. The Civil case was filed in October 2021 and stayed pending the outcome of the Criminal case. It is currently set for trial.

It alleges hundreds of violations, both Civil and Criminal, of 26 U.S.C§6103, against Howland, OFR, Batsch and other IRS CID agents for violations of return information. Howland and OFR have admitted violating 26 U.S.C.§6103 in their answers to requests for admissions. Batsch and the government have admitted the disclosures of return information, but cite necessity and that the disclosures were not wrongful, which brings us full circle.

All attorneys and the Defendant missed the lack of jurisdiction for Batsch to investigate, charge and be the case agent on the investor fraud charges because they were unrelated to tax administration matters.

## NO STATUTORY AUTHORITY TO INVESTIGATE

Judge Thomas Barker recognized the issue of Batsch not having authority to investigate and serve as case agent in the mail and wire fraud case. He ordered the government to cite the authority for Batsch. The government could not and did not cite any statutory and only gave the IRS manual, which is not law, as authority. The reason? There was no authority. The entire case, from the investigation by Batsch and the IRS team of non-tax related criminal violations; to his role and testimony in securing a non-tax related indictment from the Grand Jury in June of 2020, to his actions and testimony as case agent in the non-tax criminal violations lack any jurisdiction or statutory authority, is tainted and must be dismissed.

6

There is nothing in the tax code that empowered the IRS agent to take the investigative actions he did in RE: Non-Tax matters.

IRSCID agent Batsch was wrongly allowed to testify as a 701 witness in Defendant's case based upon the following:

a). If he had no jurisdiction, which he did not, any testimony given should have been totally excluded as it did not relate to tax matters or tax administration. He had no authority to testify as a lay witness on non-tax matters, and prepare charts and summaries. In order to do so he would have needed to be declared and qualified as an expert witness – which he was not.

b). If he did have jurisdiction, his testimony should not have been allowed as it was totally unrelated to tax matters and tax administration.

As a result, his entire testimony either way should be stricken and thrown out.

The Email warrants used to obtain the Email personal and business accounts of Phillip Roy Wasserman and Fastlife were obtained and done by IRS agent Kozincski were unlawful because they were outside the jurisdiction of the IRS and its law enforcement power resulting in a 4th amendment violation.

There was a **FRANKS** motion to suppress the Email warrants filed in Defendant,s case which was denied and did not raise the issue of lack of jurisdiction to obtain the Email warrants by the IRS. So this is an issue of first impression. These warrants discussed the advertising expenses of Fastlife, Wasserman's legal career going back twenty to thirty years, were rife with omissions and irrelevant material, but were all about investor fraud and had nothing to do with tax matters or tax administration. As a result, there is an absolute violation of Defendant's 4th amendment rights.

7

MEMORANDUM OF LAW

The law enforcement powers of the IRS have no congressional statutory or IRS code jurisdictional authority to investigate crimes other than those related to tax administration matters and purposes. The use of case agent IRSCID Sean Batsch to investigate defendant for mail and wire fraud and conspiracy re: investor fraud as to the original June 2020 indictment has ZERO authority or precedent.

The IRS can not and is not to be used as an investigatory arm of the DOJ. The IRS has subpoena power, but once that case is referred to the DOJ that power dissipates. The case law is crystal clear on this. Defendant may well be the only person in this country prosecuted for non tax crimes unrelated to tax administration matters and law by an IRSCID agent. The precedent here is unheard of and illegal.

It is a simple issue buoyed by the fact that there were 2 indictments 5 months apart. Did the IRSCID have enforcement powers or jurisdiction to invest- igate investor fraud unrelated to tax administration law and matters contained in the first indictment? ABSOLUTELY NOT!

Also what is even worse is that the original grand jury was tainted by Agent Batsch. According to case law cited below, Batsch had no authority to violate the disclosure of rule 26 U.S.C. 6103 return information to the grand jury investigating the non-tax crimes; his WRONGFUL DISCLOSURES TAINTED THE ENTIRE ORIGINAL GRAND JURY. Taxpayers have reasonable expectation of privacy in their tax documents in possession of tax preparer, and they are entitled to expect that this information will not be open to scutiny by the state or federal agencies responsible for investigation or prosecution of non-tax crimes absent particul- arized suspicion of wrongdoing meeting demands of fourth amendment. PEOPLE V. GUITIERREZ, 222 p.3D 925, 2009 cOLO. Lexis 1160.

At trial for the non-tax crimes, Batsch was the key case agent, testified at length, and discussed dozens of issues that had nothing to do with taxes such as debt charts of defendant, and debt summaries having nothing to do with taxes; actually the opposite.

All of the following are undisputed:

a) Batsch did 150 interviews re the investor fraud conspiracy and mail and wire fraud and never mentioned defendant's taxes. Why?

b) Because the FBI had turned down the investigation and a rogue agent like Batsch thought he was above the law. Quoting from the Supreme Court in <u>United States v. LaSalle</u>, 437 U.S. 298, 318 (1978) the court from the Southern District of Florida: "The government is prohibited from using IRS summons power after the recommendation to the Department to prevent the government from using the IRS as an investigatory arm of the justice department" <u>United States v. Telles</u>, 1980 U.S. Dist. Lexis 15357, Southern District of Florida. But this is just what the government did in defendant's case. Because of the FBI refusal, the government ignored the law and used Batsch as the investigatory arm.

In <u>Standing Akimbo, Inc. v. United States</u>, 2021 U.S. District Court of Colorado, Lexis 166746, the IRS argued successfully that it had the authority to investigate whether the tax payer violated the Controlled Substance Act because the information it sought was relevant to "shed light on petitioner's correct income". Furthermore, <u>Standing</u> points out that tax code section 280E gives the IRS the power to investigate non-tax crimes for TAX ADMINISTRATION PURPOSES. No such occurrence happened in the case at hand. Batsch's own sworn declaration was that he was checking to see if investor funds were a gift to defendant or were for defendant's personal use. Batsch knew defendant had a 7 figure tax loss carryforward, that gifts are not taxable (26 U.S.C. 2503) and that the investors funds were all deposited in company bank accounts. His sworn declaration is gibberish. In <u>United States v. Kahre</u>, 2009 U.S. Dist. Ct of

9

Nevada, Lexis 39524, the court held quoting the United States Supreme Court in _Skinner v. Mid-American Pipeline Co._, 490 U.S. 212, 222 (1989):

"Congress has delegated to the IRS the authority to prescribe 'all needed rules and regulation' in order to tax citizens (26 U.S.C. 7805a). Within that power, the Supreme Court has recognized that such rules and regulations, which undoubtedly affect individual taxpayer liability, are equally without doubt the result of entirely appropriate delegations of discretionary authority by Congress" There is no doubt in the case at hand here there are no such rules, regulations or congressional intent giving Batsch any of the investigative authority he exhibited. _Kahre_ went on to state that "the IRS therefore, has authority to issue rules and regulations regarding the tax liabilities of citizens and federal courts the power to review those rules." This holding came after the _Kahre_ court quoted the Supreme Court case of _Bob Jones_, in an area as complex as the tax system, the agency Congress vests with administrative responsibility must be able to exercise its authority to meet changing conditions and new problems...Congress, the source of IRS authority, can modify IRS rulings it considers improper; and courts exercise review over IRS actions. In the first instance, however, the responsibility for construing the (Internal Revenue) Code falls to the IRS. Since Congress cannot be expected to anticipate every conceivable problem that can arise or to carry out day-to-day oversight, it relies on the administrators and on the courts to implement the legislative will." _Bob Jones v. United States_,461 U.S. 574, 596-597 (1983). Based on the Supreme Court, it is obvious this court has the authority to recognize and correct the illegal overstepping of the government and IRS agent Batsch.

The IRS has a law enforcement purpose in the context of a criminal tax investigation _Lewis v. IRS_, 823 F.2d 375, 379 (9th Cir. 1987).

Agencies with law enforcement powers have the ability to conduct investigations or adjudications to enforce law or regulations _Church of Scientology int'l v. IRS_, 995 F2d. 916,919 (9th Cir. 1993) (finding that the Exempt Organization

10

Division of the IRS performs as a law enforcement function "by enforcing the provisions of the federal tax code that relate to qualification for tax exempt status.") It is clear from these rulings that the IRS law enforcement powers extend only to tax law and tax administration matters.

The violation by Batsch and the government in disclosing 26 U.S.C. 6103 return information to the grand jury is a serious violation that tainted the entire case from the bottom up.

This is addressed in re Grand Jury Empaneled , 535 F. Supp 537 (US Dist. Ct. New Jersey 1982). Here the Court had to rule on an issue where a federal grand jury which was investigating alleged racketeering in local business and industry issued a subpoena duces tecum to the New Jersy Division of Taxation Division requiring it to deliver copies of all franchise tax returns filed by or for a particular company. The division filed a motion to quash the subpoena based on the state's confidentiality of state tax records statute. Granting a qualified privilege to state tax returns and adopting disclosure provisions similar to those of 26 U.S.C. 6103 (i) and granting a qualified privilege to state tax returns was appropriate. The court also found that "although a grand jury's subpoena authority is broad, it may not compel the evidence of those persons protected by a constitutional or statutory privilege" The court had particular rulings also that apply to case at hand.

a) 26 U.S.C. 6103(i) effectively grants a qualified privilege to federal tax returns as an Act of Congress under Fed. R. Evid. 501 (which of course extends this to return information as explained by the statute and numerous court rulings).

b) The court quotes the statute and defendant points out that the government nor Batsch did not follow the statutory requirements for disclosure before the grand jury as required by statute; 26 U.S.C. 6103(i) reads as follows: A return or taxpayer return information shall, pursuant to, and upon the grant of an ex parte

11

order by a federal district court judge as provided for in this paragraph, be open but only to the extent necessary as provided in such order, to officers and employees of a federal agency personally and directly engaged in and solely for their use in preparation for any administrative or judicial proceding or investigation which may result in such a proceeding, pertaining to the enforcement of a specifically designated criminal statute not involving tax administration to which the United States or such agency is or may be a party.

c) The following section of the statute is important because in the case at hand nothing to do with the wrongful dusclosure of defendant Wasserman's return information being probative evidence of the alleged investor fraud and was unlawfully disclosed just to inflame the Grand Jury. 26 U.S.C. 6103(i)(1)(B) reads in part as follows:  The head of any federal agency described in 26 U.S.C. 6103(i)(1)(A) or in the case of the Department of Justice, the attorney general, the deputy attorney general or an associate attorney general may authorize an application to a federal district court judge for an order referred to in 6103(i)(1)(A). Such judge may grant such an order if he determines (1) that there is reasonable cause to believe, based upon information believed to be reliable, that a specific crime has been committed, (2) there is reason to believe that such return information is probative evidence in a matter related to the commission of such criminal act; and (3) the information sought to be disclosed can not reasonably be obtained from any other source, unless it is determined that, notwithstanding the reasonable availability of the information from another source, the return or return information sought constitutes the most probative evidence of a matter in issue to the commission of such criminal act.

In the United States v. Schlegal, 2009 U.S. Dist Lexis 20912 (Eastern disrict of New York), the defendants were charged with conspiracy to commit substantive securities fraud, conspiracy to commit mail and wire fraud, mail fraud, wire fraud,

conspiracy to obstruct justice, obstruction of justice, and conspiracy to impede, obstruct and defeat the IRS. Under Fed. R. Crim. P.14, they sought to sever their trials and they sought to sever the tax  counts from the non-tax counts under Fed R.Crim P.8. The tax counts were severed from non-tax counts under Fed R. Crim P.8 because the indictment did not support joinder. The non-tax charges alleged fraudlent schemes, the ultimate goals of which were to enrich defendants by deceiving shareholders and the public. There were no allegations in indictment that acts charged in tax counts furthered this goal.

These facts are applicable to Wasserman's first indictment obtained by Batsch and the IRS acting outside the scope of his law enforcement authority. There were no allegations in Wasserman's original indictment re conspiracy, mail and wire and fraud that had anything to do with tax matters or law furthering that goal.

In Schlegel, the court found that while there were no allegations in the indictment that the facts charged in the tax counts furthered this goal, nor was there any basis to believe that allegedly unreported funds were obtained from the charges alleged in the non-tax counts.

In United States v. Garcia, the fifth circuit held that the district court erred in denying defendant's motion to suppress marijuana because the Texas game warden that arrested them lacked authority to do so under Texas law, therefore, evidence seized in conjuction with arrests should have been suppressed 676 F 2d 1086 (5th Cir. 1982).

In the case at hand the IRS lacked any authority to investigate non-tax crimes unrelated to tax matters and law - yet the rogue agent and the government ignored jurisdictional requirements that apply to law enforcement powers. The IRS powers are essential to the proper functioning of the tax system, Arlington Heights v. IRS, 109 F 3D 1221, 1224 (7th Cir. 1997). This holding restates what is obvious by now - Congress and the courts have been specific the IRS powers go to tax matters or crimes related to tax matters - not crimes which fall under the jurisdiction of other law enforcement agencies.

13

## GROUNDS FIVE THROUGH EIGHT

5) The government, OFR and OFR agent Howland, and IRS agent Batsch, hid and failed to disclose exculpatory Brady evidence in violation of Brady v. Maryland, 373 U.S. 83 (1963) and Kyles v. Whitley, 514 U.S. 419 (1995) regarding the FBI's initial involvement in the investigation in the case against Mr. Wasserman and the FBI's later decision not to participate in the criminal investigation.

6) Batsch and Howland gave false testimony during the criminal trial in violation of Giglio, 405 U.S. 150 and Napue, 360 U.S. 264 (1959).

7) The case against Mr. Wasserman must be reversed and dismissed because of the multiple actions of government misconduct.

8) Mr. Wasserman was denied his Fifth and Sixth Amendment rights of Due Process, Confrontation and right to present a full defense by his inability to cross-examine Batsch and Howland concerning the FBI's initial involvement, and denied the ability to call the two FBI agents to the stand to present evidence to the jury of why they refused to pursue the case against Defendant.

Mr. Wasserman believed that the case agents, Batsch and Howland, hid exculpatory evidence, which was not being disclosed by the government particularly because Batsch, an IRS CID agent, was investigating Mr. Wasserman for mail and wire fraud, normally an area for the FBI. In his criminal case, Mr. Wasserman filed a motion to obtain their intra and inter-office emails, memos, notes, and correspondence believing these communications contained exculpatory evidence, Doc. 53, 86, and 202. The government fought vigorously against these items being disclosed and the motion was ultimately denied, Doc. 82 and 215.

Mr. Wasserman has a civil case, appeal pending, that accused Howland, OFR, and the United States of America for civil and criminal violations of 26 U.S.C. § 6130, wrongful disclosure of tax information. During Howland's deposition, he discussed how the case was initially discussed in a roundtable discussion with Batsch and FBI agents Stone and Volp. Howland also stated that one of the agents went on an interview

with Batsch himself.  Howland admitted in the deposition he wanted the FBI to get involved in the case.  The FBI had then decided not to pursue the case against Mr. Wasserman.  The foregoing information in the possession of the Government was never disclosed to Mr. Wasserman in violation of Brady.  See Kyles v. Whitley.  It is and was highly relevant and material as Mr. Wasserman has long maintained his innocence.  If Mr. Wasserman had known about the FBI's initial involvement and decision not to pursue the case, he could have cross-examined Howland and Batsch about this and called both FBI agents to the stand to explain to the jury why they decided not to get involved in the case.  Because the Government knew that the FBI had declined to pursue this case against Mr. Wasserman, there is a Napue violation because Howland presented false and misleading testimony that the IRS handled this matter because of Mr. Wasserman's tax liens, which is totally false.  The tax counts were not even part of the case until the Government filed a superceding indictment months after the Government had concluded its investigation.

The Government violated Brady, Napue, and Glossip v. Oklahoma when they failed to disclose that their star witness, Kenneth Rossman, was mentally ill and the Government failed to correct his perjured testimony.  The only recently discovered evidence of the Howland testimony in the civil suit shows yet more severe violations of Wasserman's Constitutional Rights and further proof of massive Government misconduct.

The lead AUSA, Rochelle DesVaux Bedke, has a past history of violating defendant's constitutional rights, and was responsible for the largest unopposed award in Hyde amendment history.  She has been specifically accused by both a Federal Judge and Magistrate of being involved in false and misleading testimony.  Because of her history and the overwhelming proof of Government misconduct, this case should not just be reversed, but dismissed.

15

ARGUMENT AND LAW

From the deposition of Steven Howland in the civil case, the following information came to light.

"Q:  So prior to contacting Mr. Batsch with respect to the Wasserman FastLife investigation, did you contact any other federal agency concerning the investigation?

A:  Not that I recall, possibly.

Q:  Well let me see if I can talk about things specifically.  Did you contact the FBI concerning the investigation before you contacted Mr. Batsch?

A:  I think we were-it was kind of roundtable with that other investigation that we were all talking about it.

Q:  So what do you mean by roundtable?

A:  Well the FBI was on the prior investigation that me and Shawn were on as well.

Q:  And so you're saying during--when you say round table is that literally many people in person?

A:  It was---yeah, we were meeting. as you know I had asked about, you know, I have this case, what should I do with it essentially is it a good case for you guys, to everybody at the table.  FBI was there, IRS was there.

Q:  And when did this round table take place, your best estimate?

A:  Throughout the end of 2018-ish.

Q:  But before you had spoke to Mr. Batsch?

A:  I think it was probably all around the same time.  I think that's when it got brought up.

Q:  Was Mr. Batsch at the round table?

A:  Yes

Later in the deposition:

Q:  Mr. Howland, getting back to this round table, you were there, you said

16

Mr. Batsch was there; how many total people were at this round table?

A:   I mean, it was just a loose meeting we had on a different case and probably like three total, not including myself, so four total.

Q:   Some of the people there were FBI agents?

A:   Correct.

Q:   And then the general purpose of this meeting to start with pertained to your other case?

A:   Correct.

Q:   And you were the one who brought up the FastLife Wasserman situation?

A:   Correct.

Q:   Do you remember the names of the FBI agents who were there?

A:   I believe it was Jay Stone and Rick Volp.

Q:   What was the last name?

A:   Volp-v-o-l-p.

Q:   Do you remember the first name?

A:   Rick.

Q:   And other than the prior unidentified case, have you worked with these agents on other matters?

A:   Are you excluding that unidentified case?  No, that was the only time I ever worked with them, I think.

Q:   Now did you ever disclose this round table meeting to Mr. Wasserman at any point including during the trial?

A:   No.

Q:   Do you have any reason to believe Mr. Wasserman had knowledge of this round table meeting prior to hearing about it today?

A:   No, I don't think he needed to have knowledge.

Q:   Where was this meeting?

17

A:   At the FBI office I believe.

Q:   So, based on that, did you believe this is a matter the FBI might be interested in?

A:   A matter of FBI, a matter with the IRS with the tax liens.

Q:   So were you trying, when you brought this up at the roundtable meeting to get the FBI involved in the investigation?

A:   Yes, and the IRS, anybody in the federal system.

Q:   During the meeting, did agents Volp or Stone say they had some interest in pursuing or getting involved in the FastLife investigation?

A:   They initially did, because I believe if I'm not mistaken, Jay Stone went on an interview with me and Sean at some point, either I think it was in 2019, if I'm not mistaken at some point.

Q:   You don't recall agents Volp or Stone saying anything to indicate that they were interested?

A:   They might have 1 don't recall"

It is obvious from the above exchange that the evidence of the FBI's failure to get involved in the case was never disclosed because Howland felt Mr. Wasserman did not "need to have knowlege." This is a direct violation of both <u>Brady</u> and <u>Kyles</u>. It was not up to Howland to decide whether or not Mr. Wasserman needed to know information that was potentially helpful to his defense.

This information was so critically inportant to the defense and the jury and is more outrageous Government misconduct in a case overrunning with Government misconduct. The requirements for <u>Brady</u> violation are laid out by this court in <u>United States v. Vallejo</u>, 297 F.3d 1154, 1164 (11th Cir. 2002). The four prongs are met here: (1) that the Government possessed favorable evidence to the defendant; (2) the defendant did not possess the evidence and could not obtain it with any reasonable diligence; (3) the Government suppressed the

favorable evidence; and (4) had the evidence been disclosed to the defendant, there is reasonable probability that the outcome would have been different. What would the jury have thought after learning that the FBI didn't want to get involved with the case? There is no doubt that there is a reasonable probability the outcome would have been different. "Impeachment evidence as well as exculpatory evidence falls within the Brady rule." United States v. Bagley, 540 U.S. 668, 698 (2004).

Mr. Wasserman meets these four prongs and furthermore his ability to cross-examine Howland, Batsch and the two FBI agents was violated, and his ability to present a full defense was violated by his inability to call FBI agents Volp and Stone as witnesses, to further substantiate why the FBI would not have been interested in the case. The jury had a right to know this information as did the Court and the defense. The Court gave Mr. Wasserman what amounts to a life sentence for a no crime. The Constitution and case law of the Supreme Court and this Court are crystal clear: A defendant is entitled to knowledge of any Brady material.

The Sixth Amendment right to confontation and right to present a full defense is crystal clear from the Constitution to the Supreme Court as well, and of course this Court. A criminal defendant has a constitutional right to "present his own witnesses to establish a defense." Washington v. Texas, 388 U.S. 14, 19 (1967). This right "lies at the core of the Fifth and Fourteenth Amendment guarantees of due process." United States v. Rushin, 844 F.3d 933, 941 (11th Cir. 2016). Mr. Wasserman was obviously denied his right to call FBI agents Volp and Stone, plus denied his ability to present opinion, whether lay or expert as to why the FBI would have refused to become involved in the prosecution of Wasserman.

The inability for Mr. Wasserman to properly confront both Batsch and Howland with proper cross-examination about the FBI's lack of interest in the case makes it even more egregious.

## NAPUE AND GLOSSIP VIOLATION

Nowhere in any extensive testimony and cross-examination of both Batsch and Howland at trial did either one say one word about the FBI's involvement or lack of interest in investigating the claim against Mr. Wasserman. Docs 759, 760, 765, 766, and 767 for Agent Batsch's testimony and Docs 731, 733, and 734 for Agent Howland's testimony. It is implausable to think that the Government was not aware of the FBI's initial involvement, thus failing to disclose this was false and misleading testimony by omission. When the Government fails to correct false and misleading testimony it is an absolute Napue violation, and the very recent Supreme Court case Glossip v. Oklahoma. _recon FIRMS THIS_ .

## PROSECUTORIAL MISCONDUCT

The lead AUSA has a sordid past of prosecutorial misconduct and framing innocent defendants. In this case the misconduct was rampant and inexcusable. It was in the infamous "baby Sabrina" case where she was heavily rebuked by both Judge Merryday and Magistrate Pizzo. Her outrageous behavior caused the largest unopposed award under the Hyde Amendment at that time. See Aisenberg v. Hillsborough County Sheriff's Office et al, 325 F. Supp 1366 (MD Fla 2004). When sued by the Aisenbergs, a suit she won because of immunity and not the first instance of that happening, the court made the following citations and rulings about the bad actions of Bedke similar to the severe government constitutional violations in the present case. "During the Aisenbergs' grand jury appearance, Kunz asked questions which...Kunz and Bedke knew were false and misleading but were none the less asked for the sole purpose of corruptly prejudicing the grand jurors during their investigation of this matter." (2994 U.S. Dist. lexis 15). Bedke destroyed these people's lives just as much as she has done the same to Mr. Wasserman.

The United States conceded the application of the Hyde Amendment. Judge Merryday said "I listened to the recordings and compared what I heard with the

20

transcripts provided by the United States...The disparity was shocking" (2004 U.S. Dist. Lexis 24).

The real question for this Court is not should the case be reversed, but should it be dismissed. How many bites of the apple does AUSA Bedke get at trampling the constitutional rights of criminal defendants? Dismissing the case sends a message to people like AUSA Bedke who swear to uphold that oath of defending the Constitution and then violate it.

When reviewing a prosecutorial misconduct claim, appellate courts review for harmless error, asking whether the misconduct prejudiced the defendant at trial. When assessing harmlessness, courts typically conduct a two party inquiry. First, they review the propriety of prosecutorial conduct de nova. Second, if misconduct occurred, courts will reverse the conviction only if the misconduct prejudiced trial fairness, Darden v. Wainwright, 447 U.S. 168, 181 (1996). Prosecutorial misconduct is ground for reversal only if "so infected the trial with unfairness as to make the resulting conviction denial of due process." Courts evaluate a claim of prosecutorial misconduct in a two party inquiry, United States v. Cooper, 926 F.3d 718, 739 (11th Cir. 2019). Prosecutorial misconduct is ground for reversal only if defendant's substantial rights are prejudiced. Id.

<u>GROUND 9</u>

Claim of actual innocence issue:

Defendant has always asserted his actual innocence. After the expert deadline had passed in the trial court, he found former FBI CPA agent Franklin Worrell who was not allowed to testify as the trial judge ruled he was an expert and could not testify as a key witness (An appellant point currently pending). That issue is not the purpose of this ground. Mr. Worrell who is certified in Financial Analysis, will tell this Court that he examined all books and financial records from the defendant; the government and the forensic accountants and will testify:

* - There is no crime here;

* - The businesses were profitable when shut down by the government;

* - And that had the government not intruded the businesses would have been successful.

This is not a stand alone claim but one that resulted in and results in a denial of defendant's 6th Amendment rights to present a full defense.

Defendant cites <u>Stimpson v. Warden</u>, 2025 U.S. App. Lexis 3326 (11th Cir. 2025) (Unpublished).

1) To establish <u>actual innocence</u>, a defendant must persuade the district court that, in light of new evidence, no juror, acting reasonably, would have voted to find the defendant guilty beyond a reasonable doubt.

2) New evidence of <u>actual innocence</u> includes evidence tenably claimed to have been wrongly excluded or to have become available after the trial. To be credible, an innocence claim must be based on new reliable evidence that was not presented at trial, such as exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence.

3) Courts are split on the definition of new evidence for <u>actual innocence</u> claims. One approach requires evidence that was not available at trial and could not have been discovered earlier through due diligence. Another approach considers

22

any evidence not presented at trial as new, regardless of whether it could have been discovered earlier.

4)  Evidence must demonstrate factual innocence, not mere legal insufficiency. A defendant may demonstrate factual innocence by presenting evidence that directly absolves him of involvement in the crime, such as where the state convicted the wrong person.  Evidence of actual innocence may also cast doubt on the legal sufficiency of the state's case.  It may not directly absolve the defendant of involvement in a crime, but it may lessen the probative force of the state's case to the point where a reasonable jury could not have convicted the defendant.

Defendant asks this Court to respectfully consider the following question:

Would any juror acting reasonably, have voted to find defendant guilty beyond a reasonable doubt after hearing the evidence?

Defendant submits this Court should hear from Mr. Worrell and then vacate his sentence and conviction.

23

GROUND 10

## WITNESS TAMPERING and OBSTRUCTION OF JUSTICE by IRS AGENT BATSCH

IRS Agent Batsch told various lendors/investors in FastLife that he would "Fix their tax issues and problems."

This was witness tampering and obstruction of justice at the highest level, and done intentionally for the intended purpose of tampering with witness testimony against defendant.

This is also an issue of Brady material as these acts by Batsch were never disclosed by the agent or the government to defendant. It is evidence of the government misconduct that permeated the entire trial. It meets all four prongs of the Eleventh Circuit for failure to disclose Brady material as outlined earlier in this motion. It is also severly relevant and material. What would the jury have thought of this behavior on the part of agent Batsch? How would it have influenced their verdict?

## REQUEST FOR RELIEF

Wasserman specifically requests the following relief:

1) An evidentiary hearing on the matters contained in this motion

2) A ruling that the IRS had no authority or jurisdiction to investigate non-tax related criminal violations in Wasserman's case.

3) A dismissal and vacate with prejudice defendant's criminal conviction in case number 8:20-cr-207-T-CEH-SPF.

4) Immediate bond for defendant while this matter is being decided. The Honorable Judge Honeywell has already ruled that Wasserman, a 68 year old male with NO criminal history and all immediate family in Tampa Bay area, is neither a flight risk nor a threat to the community in the case cited above.

5) A hearing on the request for bond.

6) The request for immediate bond is important because Wasserman is incarcerated illegally due to issues raised in this motion. Wasserman did plead guilty to count 11, evasion of tax payment after his conviction for conspiracy, mail and wire fraud (non-tax matters) and according to the government in a filing with the 11th Circuit, he finished that sentence on May 25, 2025.

7) A ruling that Wasserman may file a later motion to attack his tax conviction plea under the fruit of the poisonous tree constitution arguement.

8) To disqualify AUSA Bedke and AUSA Jones from further appearance as counsel in this matter as they are witnesses.

25

## CERTIFICATE OF SERVICE

I certify that a copy of this motion was mailed first class mail on
September ___9___, 2025 to:

United States Attorney Office
400 N. Tampa St. Suite 3200
Tampa, Florida 33602

___9-9-25___
Date

Respectfully Submitted,

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF FLORIDA

TAMPA DIVISION

PHILLIP ROY WASSERMAN
    Defendant

V.

                                   CASE NO. 8:20-CR-207-T-CEH-SPF

UNITED STATES OF AMERICA

## DEFENDANT SUBMITS EXHIBIT ONE
## TO HIS RULE 33 MOTION

Defendant attaches as exhibit 1 an email from his attorney in the civil case containing Stephen Howland's sworn declaration which substantiates defendant's claim of lack of jurisdiction of IRS CID Agent Batsch as stated in grounds 1-4. Defendant asks the Court to pay special attention to paragraph 25-28 in which Howland discusses Batsch interviewing several potential witnesses, many of whom were not investors in FastLife and had nothing to do with tax matters. The memos referenced by Howland will show zero questions about tax matters.

TRULINCS 73653018 - WASSERMAN, PHILLIP ROY - Unit: COL-B-B

------------------------------------------------------------------------------------------------------------

FROM: Kent, Robert
TO: 73653018
SUBJECT: Howland Declaration re MSJ
DATE: 12/16/2024 02:21:04 PM

It seems to me he is admitting to making unlawful disclosures

EXHIBIT B 0013
Case 8:21-cv-02334-TPB-SPF Document 77-2 Filed 12/13/24 Page 1 of 7 PageID 851
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMP A DIVISION
PHILLIP R. WASSERMAN,
Plaintiff,
v.
UNITED STATES OF AMERICA,
STATE OF FLORIDA OFFICE OF FINANCIAL
REGULATION, and STEPHEN HOWLAND,
Defendants.
_____/
Case# 8:21-cv-2334-TPB-SPF
AFFIDAVIT OF STEPHEN HOWLAND
BEFORE ME, the undersigned authority, duly authorized to administer
oaths, personally appeared Stephen Howland, who upon being duly sworn,
deposes and on personal knowledge states:
I, Stephen Howland, being of sound mind and the age of majority, do
hereby attest that the below facts are true and correct to the best of my knowledge
and belief:
1. I am an adult over the age of eighteen (18) years of age and I have
personal knowledge of the facts stated herein and am otherwise competent to testify
in this matter.
2. From May of 2014 until March of 2021, I was employed as an
investigator by the Florida Office of Financial Regulation (hereinafter
"OFR").
Page 1 of 7
EXHIBIT B 0014
Case 8:21-cv-02334-TPB-SPF Document 77-2 Filed 12/13/24 Page 2 of 7 PageID 852
3. I am currently employed as a Legal Administrative Specialist by the
United States Attorney's Office.
4. While I was employed by OFR, I served in an official capacity and never
acted in a personal or individual capacity.
5. In early 2018, after a report from officials in the state of Alabama, OFR
opened a case to investigate Phillip Wasserman (hereinafter "Wasserman') and his
company, Phillip Roy Financial Consultants LLC d/b/a FastLife Insurance
Company (hereinafter "FastLife"), in connection with possible state consumer
violations, fiduciary violations, and securities sales violations.
6. In June of 2018, I was assigned to the case.
7. As my initial steps in the investigation, I reviewed the public records in
several Florida counties to determine if there were any relevant filings associated
with Wasserman or FastLife.
8. I also utilized Public Access to Court Electronic Records (hereinafter
"PACER") to search for any relevant filings associated with Wasserman or FastLife.
9. I found that there were federal tax liens entered against Wasserman and
filed in the public records I reviewed.
10. I also found there were adverse civil judgments entered against
Wasserman filed in the public records.
11. I subpoenaed various accounts, received various records, and conducted
interviews with numerous investors in FastLife, most of whom were senior citizens,
Page 2 of 7

TRULINCS 73653018 - WASSERMAN, PHILLIP ROY - Unit: COL-B-B

-----------------------------------------------------------------------------------------------------

EXHIBIT B 0015

Case 8:21-cv-02334-TPB-SPF Document 77-2 Filed 12/13/24 Page 3 of 7 PageID 853
in order to obtain additional information relevant to my investigation.

12. I followed up on a consumer complaint submitted by Regine Lytell, which was filed with OFR in 2019, which alleged that she had invested in FastLife and not received her contracted return.

13. My investigation focused in part on the investors in FastLife, the types of investments they made, the amounts of the investments the made, and any returns, partial returns, or failures to render returns by FastLife.

14. I individually interviewed investors with FastLife including Jerry· Houchens, Ronald Casanova, and Richard Figlio.

15. From my interviews, I learned that Wasserman was soliciting investments both from clients that he had pre-existing relationships with, as well as from individuals with whom they had no pre-existing relationships.

16. I created memorandums of each interview memorializing such.

17. I asked the investors: (1) if they were aware of Wasserman having any tax liens or civil judgements entered against him, (2) if they believed such would have been material for them to know before investing with FastLife, and (3) if they had known of such whether they would have still invested.

18. I asked the investors: (1) if they had seen Plaintiffs compensation agreement with FastLife and (2) if they were aware of the terms of such agreement whether they would have still invested.

19. I asked the investors: (1) if they were aware of how funds invested in

Page 3 of 7

EXHIBIT B 0016

Case 8:21-cv-02334-TPB-SPF Document 77-2 Filed 12/13/24 Page 4 of 7 PageID 854
FastLife were being spent and (2) if they lmew that funds were being spent on things such as buying houses, renting cars, gambling, and shopping whether they would have still invested.

20. These questions were necessary for me to ask as part of my investigation in order to determine whether Wasserman had engaged in any possible consumer violations, fiduciary violations, and/ or securities sales violations.

21. After locating the federal tax liens against Wasserman and interviewing several investors, my investigation was referred to the United States Internal Revenue Service (hereinafter "IRS").

22. In June of 2019, the IRS Criminal Investigation Division (hereinafter "CID") initiated its investigation of Wasserman to determine whether he had committed criminal violations of the United States tax code.

23. Special Agent Shawn Batsch was the lead IRS investigator assigned.

24. Agent Batsch and I coordinated our respective interviews of numerous investors in FastLife, and Agent Batsch and I questioned the investors together in many instances during which Agent Batsch had the investigative lead.

25. These investors included George Kerckhove, Jody Chapnick, Franklin Pasz, Margo Post, Ivan and Susan D'Souza, and several members of Mergers and Acquisition Capital Services, LLC (Paul Procops, Dan Baransky, Jason Murgia, Ralph Barbieri, and Monica Difiore).

Page 4 of 7

EXHIBIT B 0017

Case 8:21-cv-02334-TPB-SPF Document 77-2 Filed 12/13/24 Page 5 of 7 PageID 855
26. During these joint interviews, the same types of questions were asked of investors pertaining to what Wasserman disclosed, whether said disclosures ( or lack thereof) were material, and whether investors would have still invested if they had such information.

27. Gabriel Acosta, my supervisor at OFR, attended numerous meetings that I had with IRS Agent Batsch wherein we discussed our joint investigations.

28. While the IRS investigation was focused on the United States tax code and potential violations of such, the OFR investigation was focused on Florida securities regulations and statutes and potential violations of such.

29. The two investigations intersected because the investments were m an

Dear Clerk,
Please make sure this is correctly docketed and sent to the judge ASAP.

Respectfully,
Phil Wasserman

TRULINCS 73653018 - WASSERMAN, PHILLIP ROY - Unit: COL-B-B

--------------------------------------------------------------------------------

insurance company in Florida and because the money from said investments involved possible federal tax issues.

30. I have personal knowledge of the interviews that I conducted independently as well as of the interviews that I conducted jointly with Agent Batsch.

31. In many instances Agent Batsch and I co-authored the memorandums of our joint interviews.

32. The IRS CID manual that the Plaintiff alleges was violated throughout the joint interviews is a manual pertaining to IRS investigators and does not apply to OFR investigators.

Page 5 of 7

EXHIBIT B 0018

Case 8:21-cv-02334-TPB-SPF Document 77-2 Filed 12/13/24 Page 6 of 7 PageID 856

33. During the course of my individual and joint interviews, I followed OFR policies pertaining to the nondisclosure of confidential information.

34. I never requested any of Wasserman's or FastLife's tax returns or tax return information from Agent Batsch or any other IRS official or agent.

35. Neither the IRS nor Agent Batsch ever gave me any of Wasserman's or FastLife's tax returns or tax return information.

36. I never had access to the IRS "back office" or any IRS database which contained Wasserman's or FastLife's tax returns or tax return information.

3 7. I utilized publicly filed tax lien information during the course of my investigation.

38. I utilized publicly filed civil judgements during the courts of my investigation.

39. Such were filed and in effect at the time that Wasserman was soliciting/managing investments in FastLife.

40. All of my actions were made for and under the direction of OFR in order to conduct a thorough investigation of Wasserman and FastLife.

41. My findings were all given to OFR.

The foregoing facts are known by me to be true from my review of the record. I am competent to testify to such facts and would so testify if I appeared in court at trial of this matter.

I have read the foregoing and declare under penalty of perjury that the

Page 6 of 7

EXHIBIT B 0019

Case 8:21-cv-02334-TPB-SPF Document 77-2 Filed 12/13/24 Page 7 of 7 PageID 857

foregoing is true and correct.

FURTHER AFFIANT SA YETH NAUGHT.

SWORN and SUBSCRIBED to me by Stephen Howland, who is: personally, known to me X or who produced identification..,_

Type of Identification produced: _____ _

My Commission Expires: 0 1 / '!};f /;;i.o;;i. 7

ahv((J ~Q>-__

Page 7 of 7