UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

V.                                                    CASE No. 8:20-cr-207-CFH-NHA

PHILLIP ROY WASSERMAN

ADDENDUM TO RULE 33 MOTION
GROUND 11

Defendant supplements his Rule 33. The suppressed evidence of the FBI intervention and decision not to prosecute the case against Defendant affected Defendant's sentence and a new trial should be ordered as a matter of justice.

There is no doubt any reference to FBI involvement and decision not to pursue Defendant's case was intentionally and wrongfully suppressed including but not limited to FBI memorandums in violation of Brady and the Due Process Protections Act and the Court order of such act. Since the case law previously cited to this Court is clear that the totality of the trial record needs to be examined in concert with the suppressed evidence. Defendant respectfully points out that he was not entitled to present the exculpatory facts of the FBI refusal to prosecute the case for sentencing purposes, thus denying Defendant his due process rights.

Defendant submits to this Court that he had a constitutional right to have the facts that the Court considered for imposing his sentence to be decided by a jury beyond a reasonable doubt.

In Defendant's case a jury did not to get to determine the facts because of the omissions of the facts caused by the suppression of the evidence. Defendant was entitled to have a jury determine beyond a reasonable doubt the

facts that increased his exposure to risk that the judge used to sentence him.

## CASE LAW AND ARGUMENT

Defendant was eligible for probation and heavily disputed the PSR report and all enhancements. Defendant states that based on the law cited below, including but not limited to the loss amount and all enhancements, the proper constitutional procedure was to have a jury determine beyond a reasonable doubt the facts that the guidelines suggested and facts that the Court adopted that increased Defendant's exposure to risk above the minimum, which is probation.

Defendant respectfully asks this Court to consider the case law cited below and pay special attention to the fact that the California Supreme Court has adopted the argument Defendant presents. The recent California Supreme Court case is not precedent for this case, but all the United States Supreme Court Law is binding precedent and applies here.

## MEMORANDUM OF LAW

In <u>Erlinger v. United States</u>, 144 S.Ct. 1840 (2024), the Supreme Court faced the question of whether a judge may decide that a Defendant's past offenses were committed on separate occasions under a preponderance of the evidence standard, or whether the Fifth and Sixth Amendments require an unanimous jury to make that determination beyond a reasonable doubt.

<u>Erlinger</u> concerns the Armed Career Criminal Act (ACCA), and the Fifth and Sixth Amendments.

In the United States' brief for <u>Erlinger</u>, the government's position was that the Supreme Court's consistant holdings that the Fifth and Sixth Amendments generally guarantee a Defendant the right to have a unanimous jury find beyond a reasonable doubt any fact that increases his exposure to punishment.

Reading <u>Erlinger</u> is like a case study in jurisprudence penalties. Among others, it cites <u>United v. Haymond</u>, 586 U.S. 634, 641 (2019) and <u>Apprendi v. New Jersey</u>, 530 U.S. 466, 477-78 (2000).

"All the facts and circumstances which constitute the offense is required by the government to include in its criminal charges." <u>Apprendi</u>, 530 U.S. at 478.

<u>Erlinger</u> holds that the Fifth and Sixth Amendments sought to ensure that a judges's power to punish would "derive wholly" from and remain always "controlled" by the jury and its verdict. <u>Blakely v. Washington</u>, 542 U.S. 296, 306 (2004).

Citing <u>Blakely</u>, 542 U.S. at 307 and <u>Haymond</u>, 588 U.S. at 640-41:

"by requiring a unanimous jury to find every fact essential to an offender's punishment, those Amendments similarly seek to constrain the judicial branch, ensuring that the punishments courts issue are not the result of judicial "inquisition", but are premised on laws adopted by the people's elected representatives and facts found by members of the community."
<u>Id. at</u> 1850

Only a jury may find "facts that increase the prescribed range of penalties to which a criminal defendant is exposed." Apprendi, 530 U.S. at 490.

"And it is a principle that does not apply when a judge seeks to issue a sentence that exceeds the maximum penalty authorized by a jury's findings (or a guilty plea). It is a principle that also applies when a judge seeks to increase a defendant's minimum punishment." Erlinger, 144 S.Ct. at 1851.

"Really this case is as nearly on all fours with any we might imagine." Id. at 1851. (Comparing Erlinger to Apprendi and Alleyne)

"The only thing judges may not do consistent with Apprendi is to increase a defendant's exposure to punishment based on their own fact finding." Id. at n.1.

"Any fact that increases the penalty for a crime must be proved to a jury." Pereida v. Wilkinson, 592 U.S. 224, 238 (2021) (quoting Apprendi, 530 U.S. at 490).

Apprendi applies to criminal penalties. See: Southern Union Co. v. United States, 132 S.Ct. 2344 (2012).

_____/

/ Erlinger is an issue of statutory minimum mandatory and maximums, yet it does not state or use the words statutory minimum or maximum here. Thus, if the minimum punishment is zero incarceration or probation, to follow Erlinger and its sister cases Apprendi and Alleyne, and punishment that relies upon facts to increase a criminal defendant's exposure to risk must rely upon a unanimous jury verdict beyond a reasonable doubt.

Black's Law Dictionary definitions:

Exposure: The amount of liability or other risk to which a person is subject

Fact: Something that actually exists

Allegation: A statement not yet proven

Penalty: Punishment imposed on a wrongdoer, usually in the form of imprisonment or fine; especially a sum of money exacted as a punishment ..............

The Sixth Amendment provides that those "accused" of a "crime" have the right to a trial "by an impartial jury." This right, in conjunction with the Due Process Clause, requires that each element of a crime be proved to a jury beyond a reasonable doubt. The scope and substance of this right depends upon the proper designation of the facts that are elements of the crime, Alleyne, 186 L.Ed. 2d at 316

## THE GUIDELINES ARGUMENT

It is undisputed that the guidelines are now advisory, and not mandatory. See: United States v. Booker, 543 U.S. 220 (2005)

In Kimbrough v. United States, 552 U.S. 85, 90 (2007), the Supreme Court explained that "the guidelines, formerly mandatory, now serve as one factor among several courts must consider in determining an appropriate sentence."

The problem is that this case, as in many others, the cart is before the horse. The Guidelines take facts from the government and the pre-sentence report (subject to objections), and serve in an advisory capacity. Advisory means to advise, or to offer guidance. The facts that the Guidelines should rely upon should only come from a unanimous jury. See: Erlinger and Apprendi.

As an intervening change of the law, Erlinger had brought to the forefront the issue of exposure to risk of a judge increasing a Defendant's penalties. Under the case law discussed below, Defendant was obviously entitled to a jury decision on the facts that increased that exposure to risk. Then, and only then, should the Trial Court have taken into account the Guidelines and other facts to assess the Defendant's sentence.

To argue that the Guidelines do not increase a criminal defendant's exposure to risk by being only advisory and not mandatory is a logical nonsequitir. Even as one factor among several the court must consider, the Guidelines should be applied only by facts determined by a unanimous jury. To do otherwise would violate the clearly stated law of the land.

In a free society, respectfully of the individual, a criminal defendant enjoys the right to hold the government to the burden of proving its case beyond a reasonable doubt to a unanimous jury of his peers "regardless of how overwhelming" the evidence may seem to a judge. Rose v. Clark, 478 U.S. 570, 578 (1986).

The Guidelines are calculated by facts; where do they come from? If they increase the exposure to risk, they have to be determined by jury.

The facts that a jury must decide before the Guidelines apply, include but are not limited to:  drug cases (where weight of drugs or volume is in dispute), or monetary loss in theft or fraud cases (where the dollar amount is undisputed). This applies to both prison and criminal penalties.  This includes any facts that increase the criminal defendant's exposure to risk.

## FACTS IN ISSUE

Loss amount (or drug weight or volume)

Theft or Fraud

Influences exposure to Guidelines

Judge decides

Forfeiture

Judge decides amount

Following Erlinger, Apprendi, and Haymond, the facts must be decided by a unanimous jury, especially if disputed and increasing exposure to risk above any minimum penalty.

## FLOOR VERSUS CEILING

Juries in our order exercise supervisory authority over the judicial function by limiting this judge's power to punish.  A judge's authority to issue a sentence

derived from, and is limited by, the jury's factual findings of criminal conduct. See: Haymond, 139 S.Ct. at 2375.

Quoting Blakely, 542 U.S. at 304: "It remains the case today that a jury must find beyond a reasonable doubt every fact which the law makes essential to a punishment that a judge might seek to impose."

But, by definition, a range of punishment includes not only a maximum, but a minimum. And, logically, it would seem to follow that any facts necessary to increase a person's minimum punishment (the floor) should be found by the jury no less than the facts necessary to increase his maximum punishment (the ceiling). Id. at 2378.

Before Apprendi, however, the Supreme Court had held that facts elevating the minimum punishment need not be proven to a jury beyond a reasonable doubt. See: McMillan v. Pennsylvania, 477 U.S. 79 (1986).

Both the "floor" and the "ceiling" of a sentencing range "define the legally prescribed penalty." Alleyne, 570 U.S. at 112.

Even though Erlinger and Alleyne discuss mandatory minimums, it is obvious from reading Haymond that any fact that increases any "floor" of punishment, i.e. drug weight and volume, dollar loss in a theft or fraud, obstruction of justice enhancement, must be decided by a jury beyond a reasonable doubt. Otherwise, a defendant's right to trial by jury under the Fifth and Sixth Amendments is violated.

Erlinger, Apprendi, and the other cases cited here use the wording "statutory minimum" or defendant's minimum punishment, not the wording "statutory minimum mandatory." Erlinger at 1851; Haymond at 2378.

These case holdings are about exposure to risk of "minimum punishment", not "statutory minimum mandatory" punishment.

In United States v. Lee, 2023 U.S. App. Lexis 4608 (11th Cir. 2023) (unpublished), Lee sought a sentence reduction under the First Step Act. The Eleventh district held that in Apprendi, the Supreme Court held that a drug quantity

finding that increases defendant's punishment must be made beyond a reasonable doubt by the jury, Apprendi, U.S. at 490.

The issue then becomes if the dollar amount or drug quantity was a fact determined by a judge that increased the criminal defendant's exposure to risk, violates his Fifth and Sixth Amendment rights, then by logical extension, any fact - for example, the dollar amount of a theft or fraud - that increases a defendant's punishment must be determined beyond a reasonable doubt.

A criminal defendant's right to present witnesses in support of a defense is a core due process right. Washington v. Texas, 388 U.S. 14, 19 (1957); See also United States v. Ruskin, 844 F.3d. 941 (11th Cir. 2016). The Eleventh Circuit has recognized that the exclusion of defense testimony is constitutional error when the excluded testimony would have "called into question a portion of [the government agent's] testimony such that a reasonable jury might receive it differently." United States v. Pemberton, 479 Fed. Appx. 264, 268 (11th Cir. 2012) (unpublished).

Defendant was entitled to a jury trial to determine the facts used to sentence him. His Fifth and Sixth Amendment rights were violated.

The Supreme Court of California held that, under the Fifth and Sixth Amendments and consistent with Erlinger v. United States, 602 U.S. 821 (2024), a trial court may not rely on aggravating factors such as the increasing seriousness of a defendant's prior convictions or the defendant's unsatisfactory performance on probation to impose an upper term sentence unless those facts are found by a jury beyond a reasonable doubt. See: People v. Wiley, 570 P.3d 436 (Cal. 2025). In doing so. the Court overruled its prior decisions in People v. Black, 161 P.3d 1130 (Cal. 2007), and People v. Towne, 186 P.3d. 10 (Cal. 2008), to the extent they permitted a broader judicial role in finding such recividism-related facts. Applying this newly announced rule, the Court ruled that the deprivation of a jury trial on these aggravating facts in the defendant's case was prejudicial under Chapman v. California, 386 U.S. (1967), requiring reversal of the sentence and remand for further procedings.

In January 2020, defendant Eric David Wiley pleaded guilty to making a criminal threat, a felony under California Penal Code §422. The trial court imposed a three-year upper-term prison sentence, suspended its execution, and placed Wiley on probation. In March 2022, while still on probation, Wiley pleaded guilty to a new charge of being in possession of a firearm. The trial court also found that Wiley had violated his probation.

On July 1, 2022, the trial court sentenced Wiley on the new firearm possession conviction and re-sentenced him on the criminal threat charge for which his probation was revoked. The court again imposed the upper term of three years for the criminal threat conviction and added a consecutive eight-month term of three years for the firearm possession. To justify the upper-term sentence, the court cited three aggravating factors: (1) Wiley's prior convictions, (2) his poor performance on probation, and (3) the increasing seriousness of his charges.

Wiley timely appealed his sentence, arguing that the trial court violated his Sixth Amendment right to a jury trial by making factual determinations about the increasing seriousness of his convictions and his poor performance on probation rather than submitting these questions to a jury.

The Court of Appeal upheld Wiley's sentence, relying on prior California Supreme Court decisions Towne and Black. These cases interpreted the prior conviction exception set forth in Almendarez v. United States, 523 U.S. 224 (1998) - which allows a judge, not a jury, to find the fact of a prior conviction - more broadly than permitted by the U.S. Supreme Court in Erlinger. The Court of Appeal reasoned that the trial court's consideration of factors like increasing seriousness and unsatisfactory probation perfromance was permissible under this exception because they relate to a defendant's recividism. It further held that §1170(b)(3), which allows courts to "consider the defendant's prior convictions in determining sentencing," was consistent with this broader constitutional interpretation.

The Court began its analysis by reveiwing the constitutional and statutory framework governing upper-term sentencing. It explained that, under the Fifth and Sixth Amendments, "any fact that exposes a defendant to a greater potential sentence must be found by a jury, not a judge, and established beyond a reasonable doubt, not merely by a preponderance of the evidence." Cunningham v. California, 549 U.S. 270 (2007). The Court further noted that this guarantee ensures a guilty verdict issues only from a unanimous jury. Erlinger, Ramos v. Louisiana, 590 U.S. 83 (2020).

Paralleling these protections, the Court noted that §1170(b)(2) permits a trial court to impose a sentence exceding the middle term only if aggravating circumstances justify it and the underlying facts have been stipulated to by the defendant or found true beyond a reasonable doubt by a jury or court trial. Interpreting this provision in light of Cunningham, the Court observed that the California Supreme Court's recent decision in People v. Lynch, 552 P.3d 877 (Cal. 2024),

2

had confirmed this jury-trial right is not merely a state law entitlement but also constitutionally required for all agravating facts - except prior convictions - used to support an upper-term sentence.

The Court observed that the focus of the dispute was the scope of the exception for "the fact of a prior conviction," which is recognized in federal precedent. Apprendi v. New Jersey, 530 U.S. 466 (2000); Almendarez v. Torres. Section 1170(b)(3) similarly allows a court to consider a defendant's prior convictions for sentencing based on a certified record without jury submission. The Court framed the question as whether, in evaluating prior convictions, a judge is limited to identifying the crimes committed and their elements or may make additional factual determinations about recividism without violating the Sixth Amendment oe §1170(b).

The Court discussed the federal jury-trial right and the Almendarez-Torres exception. It recounted that Almendarez-Torres involved whether a statute increasing setnences for reentry deportation based on prior qualifying convictions defined a separate crime or a penalty provision. The U.S. Supreme Court concluded due process does not require alleging the prior conviction in the indictment, reasoning that recividism is a traditional basis for increasing sentences. Almendarez-Torres. The Court stated that subsequent U.S. Supreme Court decisions have treated Almendarez-Torres as a narrow exception "Other than a fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Apprendi; Cunningham; United States v. Booker, 543 U.S. 220 (2005); Blakely v. Washington, 542 U.S. 296 (2004).

The Court noted that later opinions have questioned the exception's scope or validity but declined to overrule Pereida v. Wilkinson, 592 U.S. 224 (2021) (describing it as "an unusual and 'arguable' exception to the Sixth Amendment rule"); Alleyne v. United States, 570 U.S. 99 (2013)(noting that the parties had not asked the court to revisit the validirt of Almendarez-Torres); Apprendi(noting "it is

3

arguable that Almendarez-Torres was incorrectly decided" but that "Apprendi does not contest the decision's validity and we need not revisit it for purposes of our decision today").

The Court then turned to Erlinger, which it described as clarifying the exception's limits.  In Erlinger, the trial court found the defendant's prior burglaries were committed on separate occasions, triggering a higher sentencing range under the Armed Career Criminal Act.  The U.S. Supreme Court held this violated the Fifth and Sixth Amendments because the "separate occasions" inquiry requires examining the facts like timing, location, and character, which go beyond mere conviction facts.  After reviewing its precedents, the U.S. Supreme Court reiterated that virtually any fact increasing penalties must be jury-found beyond a reasonable doubt or admitted.  Id.  Turning to Almendarez-Torres, Erlinger rejected an expansive reading that would allow judges to decide any recividism-related fact; instead, it described the exception as "narrow" and confined it to "the fact of a prior conviction" and determining "what crime, with what elements, the defendant was convicted of." Erlinger.

The Court discussed Erlinger's guidance on permissable materials.  Courts may consult Shepard documents, e.g. judicial records, plea agreements, to identify jurisdiction, date, and elements, but only for this limited purpose of determining "the fact of a prior conviction" - not broader inferences.  Applying these principles, Erlinger held the "separate occasions" finding exceeded the exception because it required a qualitative assessment.  The Erlinger Court stressed that there is no efficiency exception to the Fifth and Sixth Amendments, even for seemingly straight-forward inquiries.  Noting that the "parties agree that the Sixth Amendment requires  a jury determination of the two aggravating facts at issue here; the 'increasing seriousness' of a defendants prior convictions (Cal. Rules of Court, rule 4.421(b)(2) and 'unsatisfactory' performance on probation (id. rule 4.421(b)(5)),

before those facts can be used to justify an upper term sentence," the Court agreed with them.

The Court applied Erlinger to the two aggravating factors at issue. For increasing seriousness, existing California law permits  assessment by statutory punishment ranges or offense elements, according to the Court. Black; People v. Quiles, 177 Cal. App. 4th 612 (Cal. Cr. App. 2009). However that involves a comparative evaluation beyond merely determining "the fact of a prior conviction," a qualitative  assessment exceeding the scope of the Almendarez-Torres exception and thus prohibited by Erlinger. Similarly, under existing California law, a determination of unsatisfactory probation performance may rest on new convictions or other misconduct that was not previously adjudicated in a criminal trial, the Court stated. Towne. Consequently, the current state law regarding probation performance also goes beyond the permissible scope of the Almendarez-Torres exception, the Court concluded.

The Court rejected any distinction between factusl findings and normative judgements, such as whether convictions were of "increasing seriousness". It declared: "As we read Erlinger, it appears that the high court would firmly say no (to any distinction). We understand Erlinger to require that any fact, beyond the bare fact of a prior conviction, that exposes a defendnat to harsher punishment, must be found by a jury beyond a reasonable doubt, unless the defendant stipulates to its truth or waives a jury trial. This jury trial guarantee retains it vitality even if the inquiry is 'straightforward.'"

Accordingly, the Court expressly overruled the contrary holdings in Black and Towne to the extent they are inconsistent with the Court's interpretation of Erlinger in the current case. Black and Towne had expansively construed the Almendarez-Torres exception to include recividism-related issues determinable from conviction records. For example, Black held increasing-seriousness findings

5

were judicially appropriate by reference to punishment ranges.  Similarly, Towne exempted probation-performance findings based on new convicitons.  These broad readings conflict with Erlinger's narrowing of the exception, the Court concluded.  Thus, under the Sixth Amendment, Wiley was entitled to a jury trial on these aggravating factors, the Court ruled.

The Court likewise held that §1170(b)(3) must be construed coextensively with the constitutional exception to avoid conflict.  It disapproved of prior appellate decisions interpreting the statute more broadly. People v. Morgan, 103 Cal. App. 5th 488 (Cal. Ct. App. 2023); People v. Pantaleon, 89 Cal. App. 5th 932 (Cal. Ct. App. 2023); People v. Ross, 86 Cal. App. 5th 1346 (Cal. Ct. App. 2022).  In sum, defendants retain jury-trial rights on all aggravating facts except bare prior convictions and elements.  The Court provided the following guidance on the proper procedure for adjudicating aggravating facts in sentencing:

> Defendants may assert the right to a jury trial, may waive jury in favor of a court trial, or may waive trial altogether.  Subject to the standard rules of evidence both parties may stipulate to the admission of probation reports or other evidence bearing on a defendant's social and educational history, as well as other information relevant to sentencing, including criminal history.  The burden is on the People to prove beyond a reasonable doubt the facts relied on to justify an upper term sentnece.  If those facts are properly proven, the court may take them into account and exercise its descretion under section 1170(b) to determine what sentnece to impose, keeping in mind the statutory limits on upward departures from the midterm and the requirement for stating its reason on record.

Finally, the Court assessed prejudice under Chapman, which requires reversal unless harmless beyond a reasonable doubt, i.e.. unless a jury would have found

all relied-upon facts true or they were otherwise properly proven. Lynch. Error is not harmless if evidence could rationally lead to a contrary finding. Id. The failure to hold jury trial with respect to aggravating factors is not harmless under Chapman if "the record contains evidence that could rationally lead to a contrary finding." Neder v. United States, 527 U.S. 1 (1999). In re Lopez, 14 Cal.5th 562 (Cal. 2023). Applying this standard to the present case, the Court concluded that the lack of a jury trial with respect to the aggravating factors was "prejudicial."

For increasing seriousness, the Court noted that Wiley's history spanned two decades, starting with minor infractions and misdemeanors, e.g. unsafe speed, marijuana possession, and progressing to felonies, mostly drug related with 16 month-to-3 year ranges, plus a 2016 transportation conviction (2-to-4 years) and 2020 criminal threats (16 months to 3 years, a serious felony). While progression from misdemeanors to felonies suggested increasing seriousness, a rational juror could emphasize felony similarities or recent history, disagreeing beyond a reasonable doubt, the Court stated. The serious-felony designation for threats was one factor, not dispositive, underscoring the inquiry's qualitative nature. Thus, the Court could not conclude beyond a reasonable doubt that a properly instructed jury would uniformly determine that the convictions were of increasing seriousness.

For unsatisfactory probation, the probation report showed mixed performance: success in one case (completed treatment, paid fines, no violations) but violations via new convictions in two others, leading to revocation, though posr-prison compliance was fair. The Court concluded that a rational jury could disagree on overall unsatisfactoriness, especially with potential additional testimony, and ruled that the lack of a jury trial was not harmless beyond a reasonable doubt.

The Court reversed the judgement of the Court of Appeal and remanded with directions to return case to the trial court for further procedings consistent with its opinion.

Defendant most respectfully cites to this Court the case of United States v. Hood, 2025 U.S. App. Lexis 12332, filed May 21, 2025 where a ruling by this Court was remanded by the Eleventh Circuit for resentencing. Even though Hood dealt with the Armed Criminal Act, the Eleventh cited Erlinger. "The government must prove beyond a reasonable doubt to a unanimous jury the facts necessary to sustain the punishment it seeks", Erlinger at 824. That wasn't done in Defendant's case.

Defendant's Rule 33 is a motion for a new trial, not a motion to vacate sentence. However, Defendant repeats respectfully, without the evidence of the facts of the FBI neither a jury nor this Court had the full information to properly sentence Defendant. The omission of this evidence in conjunction with sentencing alone is fatal. Taken into context of the full record, Defendant's conviction must be overturned.

## CONCLUSION

The omissions of the suppressed evidence affected the facts to be presented to a jury to find beyond a reasonable doubt and the facts for which the Court made a decision on its sentence of Defendant. It is clear from the Law cited above the Defendant's sentence as imposed was a violation of Defendant's due process rights. This however, was not a fault of the Court but caused by the government's intentional and malicious fraud upon the Court.

Taken in totality of the trial record, the suppressed evidence has resulted in a constitutionally void sentence, which further strengthens Defendant's argument in his Rule 33 motion for not only a vacate of his judgement but calls for a dismissal of the charges.

Common sense dictates if Defendant has the constitutional right to have a jury decide the facts beyond a reasonable doubt that determines his exposure to risk in sentencing, the omissions of suppressed critical facts to make this decision is an absolute violation of Defendant's constitutional rights. Thus, the suppression of the critical exculpatory evidence permeated throughout the entire record up to and including sentencing. Justice demands a new trial and/or a dismissal of all charges. Defendant incorporates all previous case law cited and his motion for immediate bond and an evidentiary hearing in this addendum.

Date: 10/29/25

Respectfully Submitted,

Phillip Watterman

## CERTIFICATE OF SERVICE

I certify that a copy of the motion was mailed via first class mail on this date to the U.S. Attorneys Office, 400 North Tampa Street, Suite 3200, Tampa FL 33602; Attorney General Bondi, Washington D.C.; and FBI Director Patel, Washington D.C.

Date: 10/29/25

Phillip Roy Wasserman