# Attachment

# 25-13515-JJ

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE ELEVENTH CIRCUIT**

**PHILLIP R. WASSERMAN,**

**Plaintiff-Appellant**

**v.**

**UNITED STATES OF AMERICA, STATE OF FLORIDA, OFFICE OF FINANCIAL REGULATION, AND STEPHEN HOWLAND,**

**Defendants-Appellees**

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**

## APPELLEE BRIEF FOR THE UNITED STATES

**BRETT A. SHUMATE**
*Assistant Attorney General*
**JOSHUA WU**
*Deputy Assistant Attorney General*

**JENNIFER M. RUBIN** (202) 307-0524
**DOUGLAS C. RENNIE** (202) 305-7546
*Attorneys, Tax Litigation Branch*
*Civil Division, U.S. Department of Justice*
*Post Office Box 502, Washington, D.C. 20044*

## STATEMENT OF THE CASE

### (i) Course of proceedings and disposition in the court below

After he was indicted for various tax and related financial crimes, Wasserman brought this suit seeking damages for allegedly unauthorized disclosures under I.R.C. § 7431. The case was stayed during his criminal case. After it resumed, the parties completed discovery and cross-moved for summary judgment. The District Court granted the defendants' motions and denied Wasserman's motions. Wasserman now appeals.

### (ii) Statement of the facts

#### 1. IRS-CI's authority to investigate financial crimes

Special agents in the IRS Criminal Investigation Division ("IRS-CI") investigate potential criminal violations of the Internal Revenue Code and related financial crimes. *E.g.*, *Houser v. Church*, 486 F. Supp. 3d 117, 125 (D.D.C. 2020); (*see also* Doc. 117-1 at 2-3 ¶2.) They are guided in their work by the Special Agents' Handbook. *See* Internal Revenue Manual ("IRM") Part 9. Special agents are authorized to investigate and enforce the criminal provisions of the internal revenue laws and related statutes. *See* IRM 9.1.2.2, 2018 WL 7775093 (citing,

*inter alia*, I.R.C. § 7608(b)). There are dozens of non-tax money laundering, fraud, and bribery crimes that fall within IRS-CI's investigatory authority. *See* IRM 9.1.3-1, 2018 WL 7775334 (Statutes within the Jurisdiction of Criminal Investigation); IRM 9.1.3-2, 2018 WL 7775336 (Statutes Applicable When Charged in Conjunction with a Tax or Money Laundering Violation over which CI Has Jurisdiction).

**2. The investigation**

In 2018, the State of Florida's Office of Financial Regulation ("OFR") began an investigation into Wasserman and his insurance company, FastLife, after receiving a complaint from State of Alabama officials. (Doc. 77-2 at 2 ¶5; Doc. 81-2 at 30-31.) A Florida consumer also submitted a complaint about Wasserman. (Doc. 77-2 at 3 ¶12.)

Wasserman is a former attorney with a background in the insurance industry. (Doc. 21 at 7 ¶¶18-20.) He founded FastLife as an "insurance business" in 2016. (*Id.* at 8 ¶29.) The company had "significant" start-up costs, which led Wasserman to seek funding from "individual lenders and investors." (*Id.* at 8-9 ¶¶32-33.) Wasserman and FastLife CFO Kenneth Rossman solicited investments from many clients, some of whom loaned money to the company through

promissory notes and some of whom obtained equity stakes. (*Id.* at 10 ¶¶34, 36-37.) But Wasserman also acknowledged that he had "financial problems" that resulted in tax liens being filed against him. (*Id.* at 8 ¶27.) As OFR Investigator Stephen Howland subsequently learned, many of the investors were senior citizens with no prior relationship with Wasserman or Rossman. (Doc. 77-2 at 2-3 ¶¶11, 15.)

Investigator Howland discussed the investigation with Shawn Batsch, a special agent with IRS-CI. (Doc. 81-3 at 25-26; Doc. 81-4 at 2 ¶1.) IRS-CI joined the investigation in 2019, with Agent Batsch taking the lead. (Doc. 81-2 at 170; Doc. 81-4 at 3 ¶4; Doc. 77 at 4 ¶22.) He did so in his capacity as an IRS-CI special agent and a member of the FBI's Joint Financial Crimes Task Force. (Doc. 117-1 at 3 ¶3.) The investigation focused on whether Wasserman defrauded investors in FastLife and committed various tax crimes. (Doc. 81-4 at 3 ¶4.) Those potential crimes included tax evasion, filing false tax returns, securities fraud, mail fraud, wire fraud, and money laundering. (Doc. 117-1 at 3 ¶4.) The non-tax and tax violations were part of a single investigation. (Doc. 117-1 at 3 ¶4; Doc. 77-2 at 5 ¶¶28-29.) In white collar fraud cases,

the same evidence is used to prove mail fraud, wire fraud, and criminal tax violations. (Doc. 117-1 at 3 ¶4.)

IRS-CI agents sought to determine whether Wasserman failed to report as income the funds he solicited from investors and used for himself, thereby committing tax evasion. (Doc. 117-1 at 3-4 ¶5.) They also sought to determine whether Wasserman violated money laundering statutes by commingling investor funds with his personal funds in FastLife's account and to determine how the funds were used. (*Id.*) To prove money laundering, the funds must originate from a specified unlawful activity, such as mail or wire fraud. (*Id.*) Thus, those charges are crucial to substantiating money laundering charges. (*Id.*)

Individuals committing fraud rarely report the fraudulent proceeds as taxable income. (Doc. 117-1 at 5 ¶9.) To determine the scope of the fraud and extent of undeclared income, agents needed to determine whether the investors would have made their investments if they had known about Wasserman's prior tax debts and judgments. (*Id.*) They needed to find out whether the payments were business investments or were made as gifts or otherwise intended for